[PHILADELPHIA, JANUARY, 24, 1829.]

## LEE *against* WRIGHT and others.

### IN ERROR.

An amendment of the declaration may be permitted on a second trial, after the reversal of a former judgment.

Where a person dies intestate leaving a debt or debts unpaid, the children of such intestate cannot maintain a suit for any part of his estate, or the proceeds thereof, against one having the property of such intestate, or holding it as their trustee; but administration must be taken out, and the debts first paid.

If a person intermeddle with the goods of an intestate, or the proceeds thereof, and act as executor *de son tort*, no administration being taken out, no trust can be raised in favour of the children as to such property, or the proceeds thereof, or any part of the same, so to enable them to sue for such property, while the creditors of the estate remain unpaid.

THIS case, which was an action brought by the defendants in error, *Jane Wright* and others, who were stated in the writ to be the infant children of *John Wright*, deceased, and who sued by their guardian, against *William Lee*, the plaintiff in error, had been before this court at a former term; when the judgment of the District Court was reversed, and a *venire facias de novo* awarded. See 14 *Serg. & Rawle*, 105.

When the trial again came on in the District Court, the plaintiffs below moved to file two additional counts to the declaration, which originally was for money had and received.

The *first* of these counts stated, that the defendant below was possessed of sundry goods and chattels of the value of two thousand dollars, which were by him held in trust for the sole use and benefit of the plaintiffs; and that he was bound justly and truly to administer and keep the same, and faithfully to apply them to the sole use and benefit of the plaintiffs. In consideration whereof, the defendant assumed and promised to keep, administer, and apply them as aforesaid. Nevertheless, he did not truly and faithfully administer and apply them as aforesaid, but on, &c., did apply, and convert the said goods and chattels, and the proceeds thereof, to his own use and benefit, and hath refused to make any compensation.

The *second* count stated, that the defendant below held a certain bond and warrant dated, &c., for two thousand dollars, the same being the consideration money for the purchase made by *William Chase* of the defendant, of certain goods and chattels held by the defendant, for the use and benefit of the plaintiffs. In consideration whereof, he assumed and promised to hold the bond for the exclusive use of the plaintiffs, and apply the money to their use and none other. Nevertheless, the defendant caused judgment to be entered and execution to be issued, and levied on the said goods and chattels, and delivered up to the said *William Chase* half of the goods for the said *Chase's* own proper use, and not for the use of the plain-

tiffs, and took possession of the other half to his own use, and hath refused to make any compensation.

The defendant objected to the filing of these additional counts; but the court permitted them to be filed, which was now assigned for error.

Several other points arising upon the record, were made in this court, and argued by *P. A. Browne,* for the plaintiff in error, and by *J. P. Norris,* jr., and *Rawle,* for the defendants in error, some of which will be found in the former report of this case. Those which had not been already decided, are fully stated in the opinion of the court, which was delivered by

Ton, J.—As to any point already decided in this cause by our predecessors, 14 *Serg. & Rawle,* 105, I hold myself bound by the decision. Every exception, then taken and overruled and now repeated, is thus answered at once: And the joinder in the suit by the three plaintiffs having been then supported, is supported by us. The two new counts seem to have been very properly admitted by way of amendment. So there remains but one matter to be considered, In the court below the defendant's counsel insisted—" *That where a person dies intestate, leaving personal estate and leaving a debt or debts unpaid, the children of such intestate cannot maintain a suit for any part of the same estate, or of the proceeds thereof, against one having the property of such intestate or holding as their trustee, but administration must be taken out and the debts first paid.*" And again, " *That if a person or persons intermeddle with the goods of an intestate, or the proceeds thereof, and act as executors de son tort, no administration being had, no trust can be raised in favour of the children as to such property, or the proceeds thereof, or any part of the same, so as to enable them to sue for the same while the creditors of the estate remain unpaid.*" The court, in charging the jury, answered both these propositions in the negative, which I apprehend, was error This point was not decided when the cause was formerly in this court. The opinion given by Duncan, J., repeatedly supposes that no debts remained due. It has been argued, that in fact no debts were shown on the trial; an argument which is, perhaps, not supported by the evidence on the record. But that seems to be a matter not now for discussion. The court, in substance, directed the jury that with or without the incumbrance of debts upon the estate, the action was maintainable by the children. The hardship of the case, which has been dwelt upon, seems to be very true. The two verdicts show it. So any other case would be a hard one of children suing in right of their father for personal property, and making out a good title in every respect except that they can show no letters of administration. But if in one case a particular hardship is to be mended at the expense of general rules, it must be so in other cases, and there will be danger of a very inconvenient practice of permitting the assets and debts of an intestate to be sued for by the

(Lee *v.* Wright and others.)

next of kin, and recovered without letters of administration. If this can be done either directly and at once, or circuitously by setting up an executor *de son tort*, under the name of a trustee, the consequence seems most certain that when any thing unfair is intended, no administration will be taken out in, any case. It will afford every temptation and almost impunity for embezzlement. And suppose the very best intentions in the next of kin; that alters not the case, unless we have a right to substitute their integrity in lieu of the pledges known to the law; such as oaths, inventories, and bonds with security: shackles which it is not likely any man, honest or otherwise, will take the trouble of assuming, if without that trouble they can be permitted, in the characters of trustees and *cestui que trusts,* to hold all the legal powers of administration. Almost the only compulsion which our law makes use of to oblige those interested in his intestate's assets is the impossibility of suing without them. No case has been shown of an action sustained for such assets, unless by or against a lawful administrator. An executor *de son tort,* can maintain no action. 2 *Com.* 507. A recovery in this case cannot be pleaded against a rightful administrator, and so much of the effects as belonged to the intestate may be recovered a second time from the defendant. *Vin. Ab.* 222, 223, 224, 225.

As to this being a claim of equity, I apprehend that even in equity, no such action could be suffered. In *Humphrey* v. *Humphrey,* 3 *P. Williams,* 349, a bill for an account of the estate of a deceased person, though the plaintiff had, under the statute of distribution, an unquestionable right to the effects when recovered, yet, expressly because he had not administered, the Lord Chancellor rejected the bill, saying that " for aught that appears to the contrary, there may be debts due." True, a creditor may administer, if nobody else will. But, I apprehend, that in nineteen cases out of twenty, a creditor will very wisely prefer to lose his debt rather than take in hand to administer on the estate of a stranger. And as to there being no danger of mischief to arise from want of a legal administrator, because whoever intermeddles is answerable to creditors as *executor de son tort,* it may be observed that such remedy must always be doubtful, or contentious. Besides, there is no inventory, no security; the wrongful executor may be insolvent, he may move out of the county, out of the commonwealth. Further, this court has decided in *Nass* v. *Vanswearingen,* 7 *Serg. & Rawle,* 192, that on a judgment against such wrongful executor, the lands of the intestate cannot be taken in execution, so that without administration, the remedy of creditors must be, in almost every respect, illusory. But our own statute law seems conclusive of the question. It expressly gives to the next of kin, &c., a right only to " *what remaineth clear after all debts and funeral and just expenses of every sort, first allowed and deducted.*" *Purd. Dig.* 372. It directs refunding bonds to be given. It enables creditors and legatees to remove even a rightful executor or administrator from his

(Lee *v.* Wright and others.)

office, unless additional security is entered. *Ib.* 614. It enacts that even letters of administration, though granted in all the forms of law, to the proper persons, by the proper officer, if without bond and sureties, shall be *void* and of *no effect*, "and the officer granting the same and *his* sureties, shall be *ipso facto* liable to pay all damages." *Ib.* 611. Now can it be said, when the act of assembly is so peremptory to deny all authority to an administrator who has neglected to give security, though appointed by the proper officer, commissioned and sworn, yet that the same authority may in another way be legally assumed by whoever may think fit to assume it, without oath, or appointment, or sureties, or any responsibility, except what every trespasser incurs? Over and above the security of private rights, the public revenue is concerned. So much of that as arises from the tax on collateral inheritances, depends chiefly upon executors and administrators. They and their sureties are made responsible by the law. *Pamph. Ed.* 1826, *page* 227. And, by the 5th section, it is enacted, that, "In addition to the oath now required by law to be taken by executors and administrators, they shall take an oath or affirmation that he or she will diligently and faithfully regard and well and truly comply with the provisions of this act; which oath or affirmation the registers of wills for the respective counties are hereby authorized and required to administer and to place the same of record with the usual oath or affirmation." The unanimous opinion of the court is, that this judgment must be reversed.

Judgment reversed, and a *venire facias de novo* awarded.