HEGE and others, *against* HEGE and others.

IN ERROR.

.A. leaving several children, devised to his son B. a tract of land, he paying fifty dollars an acre therefor; to his son C. a tract of land, he paying sixty dollars per acre therefor; the amount of money so payable to be equally distributed among all his children. B. took under his father's will, made several payments according to its direction, and died leaving children: his administrators having obtained from the Orphans' Court an order to sell his real estate, for the payment of debts, sold the same subject to the payment of the balance of the money due under his father's will. Held that the administrators sold, and purchaser took nothing but the land, and was not entitled to the interest which B. had in the land of his brother C. under his father's will.

When C. came of age, he refused to take the land devised to him, and an agreement was entered into between the guardian of B.'s children, and all the other children of A., that the land devised to C. should be sold, and the money equally divided between them: the land, in pursuance thereof having been sold by trustees appointed for the purpose, and the money in their hands, it was held that a suit would not lie against them in the names of the children of B., to recover their share, but must be brought in the name's of B.'s administrators, there being debts of B.'s estate yet unpaid.

WRIT of error to the court of common pleas of Franklin county, in an action for money had and received, brought by the plaintiffs in error, *Polly Hege, Susan Hege,* and *Nancy Hege,* by their guardian, *Jacob Zent,* against *Peter Hege; Jacob Hege* and *Philip Tritt,* the defendants in error.

The record exhibited the following facts:—*Christian Hege,* the grandfather of the plaintiffs, and father of two of the defendants, was in his life time seized of two tracts of land, and died, having first made his last will and testament, the material part of which to this cause is as follows:

"To my son *Henry,* I give and bequeath two hundred acres of land lying and situate on the north side of my mansion house and property, the beginning to be on my east line, and run a westerly course, so as to be equally advantageous to both tracts, at present undivided; this division, I will *Jacob Hege,* one of my sons and two discreet neighbours, to be chosen by *Jacob Hege* and *Henry Hege,* to determine. This two hundred acres I value to *Henry Hege,* at fifty dollars per acre, payable in instalments of three hundred dollars in each year, for five years; after five years I will that he pay the

sum of four hundred dollars yearly, until the whole be discharged: if *Henry Hege* refuses to comply with these terms, it is my will that my executors sell and convey the same land to the highest bidder, at a fair and public sale; if he complies, I will the above described land to him, his heirs and assigns, forever. I will and bequeath to my son, *Peter Hege,* two hundred and thirty-six acres, and fifty-eight perches of land, and allowance, including my mansion house, barn, buildings and appurtenances thereto belonging. This land lies situate on the south side of my property, which I value to him at sixty dollars per acre, payable in instalments of five hundred dollars each year for five years; then the instalments shall be six hundred each year until the amount is paid. My will is that *Jacob Hege* act as guardian for *Peter Hege,* until he is twenty-one, and grant the privilege of selling fifty or sixty acres of the above described land, to be sold and conveyed by my executors. *Jacob Hege* shall choose out the part to be sold, where it will least injure the place. The above described mansion tract I will to *Peter Hege,* his heirs and assigns, forever, the amount being discharged." "I have made the foregoing valuation of my land, in order to leave my property as near equal as possible among my children." "Finally, I will that each of my children shall receive an equal share of my whole estate, of every description, except my smith tools, which I will to *Henry* and *Peter Hege.*"

The testator appointed *Jacob Hege, Samuel Zent* and *Peter Hege* to be his executors, of whom *Jacob Hege* alone was the surviving and acting executor, when this suit was brought.

This will was proved 20th May, 1815. *Henry Hege,* the devisee, took possession of the land devised to him, and made four of the payments directed by his father's will; and on the 16th July, 1820, died intestate, leaving three children, who are the plaintiffs in this suit.

*Henry Hege's* administrator petitioned the orphans' court for an order to sell the land of his intestate, for the payment of debts, which was granted; and the administrator sold and conveyed the same land which had been devised to *Henry Hege* by his father, to *Samuel Diehl,* on the 12th June, 1821.

On the 9th March, 1824, *Henry Hege's* administrators settled their account in the orphans' court, and there was found a balance in their favour of one hundred and twenty-three dollars and seventy-five cents, after which, and before the bringing of this suit, they were discharged from their office of administrators by the court. When *Peter Hege* came of age, he did not elect to take the devise to him under *Christian Hege,* his father's will: but on the 21st December, 1822, the following agreement was made and executed by and between all the heirs and legatees of *Christian Hege* and the children of *Henry Hege,* deceased, who are the plaintiffs in this suit by their guardian.

(Hege and others *v.* Hege and others.)

" Whereas *Christian Hege* of the county of Franklin, and state of Pennsylvania, by his last will and testament, did devise and bequeath unto his son *Peter,* his mansion tract of land at a certain valuation, and did distribute the money arising from the sale amongst his children. Now be it known, that it is mutually agreed by and between said *Peter Hege* of the one part, and his brothers and sisters, legatees as aforesaid, of the other part, that his said lands so devised to said *Peter,* should be sold for the best price that can be obtained for the same, and the money arising from said sale, shall be equally divided amongst the children of said *Christian Hege,* deceased, or their representatives, so that the said *Peter,* out of the whole real and personal estate of the said *Christian Hege* shall receive an equal share with his brothers and sisters and no more. And it is further agreed, that said *Peter Hege, Jacob Hege* and *Philip Tritt,* for themselves and the other legatees, do contract for the sale of the said tract of land to the purchaser, the said legatees getting their shares of the purchase money, in satisfaction of what they would annually have been entitled to, from *Peter,* under the said will, and will execute the necessary receipts and releases for the same to the said purchaser. And whereas said *Peter* has been charged by his guardian, *Jacob Hege,* and his agent in collecting rents, making sale of part of the land, and making calculation and settlement, three hundred and five dollars, it is considered as reasonable that said *Peter* is not to be charged with the whole of said sum, but he is to be exclusively charged with one third thereof, and the other two thirds shall be taken off all the legatees, equally, in making the distribution."

In pursuance of this agreement, in April, 1824, *Peter Hege, Jacob Hege* and *Philip Tritt,* sold the land mentioned, and received the purchase money, which it was agreed should be considered in their hands, for the purpose of trying the several questions which arose out of the facts.

In this court two questions were presented for argument and decision.

1st. Is not *Samuel Diehl,* who purchased the land of *Henry Hege,* deceased, from his administrators, entitled to all the interest which *Henry Hege* had under the will of *Christian Hege,* deceased, and consequently to the money payable out of the land of *Peter* to *Henry?*

2d. Can this action be maintained in the names of the heirs of *Henry Hege?* Should it not have been brought by the administrators?

*Dunlop,* for the plaintiffs in error.

First. The only interest which *Henry Hege* had under the will of his father, which affected the land devised to *Peter,* was a legacy charged upon it; there was no application to the orphans' court by the administrators of *Henry* to sell this interest; that court granted an order for the sale of two hundred acres of land described

by metes and bounds, which could not embrace a legacy falling due in successive years, and payable out of another tract of land; nor would that court have power to grant such an order.

Second, The yearly payments to be made by *Peter* out of the land devised to him, were in the nature of an annuity, and go to the heir, and not to the administrator. 1 *Rop. on Leg.* 153. 2 *Vernon Rep.* 133. *Toll. Law of Exec'rs.* 178. And although an annuity is generally chargeable upon the person of the grantor, yet it may be chargeable upon a real or personal fund. 1 *Com. Dig.* 622. *tit. Annuity.* 1 *Jac. Law Dic. tit. Annuity, Doc. & Stu.* 90. 10 *Mod. Rep.* 237. 2 *Ves. Sr.* 17. 1 *Brown's Chan.* 377. 1 *Rop. on Leg.* 153.

If a devisee refuses to take land charged with legacies, it descends to the heir subject to the payment of those legacies; and therefore, *Henry*, the father of the plaintiffs, being an heir, upon the refusal of *Peter* to take, the fee and the charge being both vested in him, the charge would be merged in the inheritance. 8 *Com. Dig.* 311, *tit. Merger.* If lands are devised to A. and he cannot be found, they descend to the heir: so if land be devised to the executors to sell, before they qualify themselves to sell, the land goes to the heir. *Henderson* v. *Wilson*, 13 *Sergt. & Rawle*, 330.

The application of these legal principles to the facts of this case lead inevitably to the conclusion, that the claim which the children of *Henry* had upon the land of *Peter*, was a real interest, which descended to them, and for which they alone could sue.

In another point of view. A proper construction of the agreement of the 21st of December, 1822, amounts to this, that the legatees agree not to take their legacies, and the devisee not to take the devise; whereby the will of *Christian Hege* was rendered inoperative as to this land, it therefore descended as realty to *Henry Hege's* children, and therefore they alone could sue for the money arising out of the sale of that inheritance, which was made as to their interest, by their agreement and authority.

There was a valuable consideration which induced *Peter Hege* to enter into this agreement: for upon his refusal to take the real estate devised to him, subject to the legacies, he would take nothing. 2 *Rop. on Leg.* 447–450. And if he took the land, he would have been personally liable for the legacies, which amounted to more than its value. *Gleim* v. *Fisher*, 6 *Johns. Chan. Rep.* 33.

If then *Peter Hege*, under the influence of this consideration, and the other defendants, thus agreed with the plaintiffs and the other heirs of *Christian Hege*, that this part of the estate should be considered as *land*, and should be sold as their *inheritance*, they ought not now to be permitted to sustain a defence against the legal operation of their agreement.

*Crawford* appears for *Samuel Diehl*, the purchaser of *Henry Hege's* estate from the administrators.

(Hege and others *v.* Hege and others.)

The defendants are mere stakeholders, having no interest in this cause.

The administrators of *Henry Hege* applied to the orphans' court for an order to sell the estate devised to *Henry* by his father's will, subject to the payment of the legacies; and the conditions of sale made known by the administrators, stated that they would sell all the interest of *Henry Hege,* deceased, under his fathers will, " which is herewith exhibited." The interest which *Henry* had in *Peter's* land, being part of the estate which he took under his father's will, passed by the sale made by *Henry's* administrators to *Samuel Diehl;* there was therefore nothing left in *Henry's* heirs to sue for.

It is *Samuel Diehl* who defends in this suit against the operation of an agreement, in the subject matter of which, he had an interest at the time of its execution, and to which he is not a party, and cannot therefore be affected by it.

But the plaintiffs in this suit cannot recover at all; if there can be a recovery by any one but *Samuel Diehl,* it must be by the administrators of *Henry Hege.*

By the will of *Christian Hege,* deceased, his ten children were *to share his real and personal estate equally,* and executors of that will were appointed, through whose hands the estate must come to be distributed, and therefore, in the shape of personal estate and not land.

The balance overpaid by the administrators of *Henry Hege,* as appeared upon the settlement of their administration account, remained a debt against the estate, and being indebted, no one but his administrators could sustain an action to recover a legacy due to him.

*Chambers,* for the defendants in error.

This cause depends upon the construction of the will of *Christian Hege,* deceased.

The interest of *Henry,* under his father's will, was land. *Henry* could not have sued *Peter,* nor could *Peter* have sued *Henry* for their respective legacies. The land was devised in consideration of fifty dollars an acre to one, and sixty dollars an acre to the other; and which was not payable by *Peter* to his brothers and sisters, nor by *Henry* to his brothers and sisters, but which was payable by *Henry* and *Peter* respectively to the executors of their father, *Christian Hege,* and therefore if *Henry* was alive, he could sustain no action against *Peter,* and therefore his administrators, much less his heirs, cannot sustain it.

If the will of *Christian Hege* had been executed, *Peter* would have to pay six hundred, and *Henry* four hundred dollars per annum, to the executors, and this was to be equally distributed between the ten children; out of which *Henry's* share would be one hundred dollars per annum, leaving him a debtor to the estate to the amount of three hundred dollars per annum: and being thus indebted to

(Hege and others *v.* Hege and others.)

the estate, he could not sustain an action to recover from it. *Henry,* having taken the lands devised to him by his father's will, became personally liable for the payment of the legacies; and being thus a debtor to the fund ten dollars for every one he was to receive, neither he, his heirs nor administrators, can recover.

*Peter Hege* had no election to make, either to take or not take the land devised to him, and take his share of the estate, as was the case with *Henry;* and the only effect which the agreement of the 21st December, 1822, had upon the situation of the parties, was to give to *Peter* a share in the estate, upon his refusal to take the devise, which without the agreement he would not have been entitled to.

*Dunlop,* in reply.—*Samuel Diehl* being no party to this suit, cannot be affected by it in any way. It is not the true construction of *Christian Hege's* will, that the whole estate was a general fund for the payment of the legacies; on the contrary, it is the manifest intention of the testator that the legacies should be paid by *Henry* and *Peter* directly to the legatees, and not to the executors.

Because of *Peter* being liable to pay to *Henry* a certain legacy, and *Henry* being liable to pay to *Peter* a certain legacy, both of which being charged upon their respective devises, the law does not make an extinguishment of the one to the amount of the other: if it did, the rule must necessarily be general, and take effect immediately upon the death of the testator; and the law would be the same although the one or the other may have assigned his legacy, or the fund out of which it was payable, may have been assigned. Or suppose the land of one or the other should be sold for the debts of the testator? The consideration of these supposed cases, suggests difficulties which are unanswerable, and lead to the conclusion that the law is not on this point as contended for by the defendants.

The opinion of the court was delivered by

HUSTON, J.—This was a case stated, for the opinion of the common pleas, on the will of *Christian Hege,* deceased, and the facts which have occurred since his death.

*Christian Hege,* by his last will, after directing his debts to be paid, and making provision for his wife, devised as follows: "To my son *Henry* I give and bequeath two hundred acres of land, lying and situate on the north side of my mansion house and property, the beginning to be on my east line and run a westerly course, so as to be equally advantageous to both tracts, at present undivided. This division I wish *Jacob Hege,* and two discreet neighbours to be chosen by *Jacob Hege* and *Henry Hege,* to determine. This two hundred acres I value to *Henry Hege* at fifty dollars per acre, payable in instalments of three hundred dollars each for five years; after five years, I will that he pay the sum of four hundred dollars yearly, until the whole sum be discharged. If *Henry Hege* refuses to com-

(Hege and others *v.* Hege and others.)

ply with these terms, it is my will that my executors sell the same land to the highest bidder, at fair and public sale; if he complies, I will the above described land to him and his heirs and assigns forever.

"I will and bequeath to my son, *Peter Hege,* two hundred and thirty-six acres fifty-eight perches of land and allowance, including my mansion-house, barn, buildings and appurtenances thereto belonging. This land lies at the south side of my property, which I value to him at sixty dollars per acre, payable in instalments of five hundred dollars per year, for five years; then the instalments shall be six hundred dollars per year until the amount is paid. My will is that *Jacob Hege* act as guardian of *Peter Hege* until he is twenty-one, and grant the privilege of selling off fifty or sixty acres of the above land, to be sold and conveyed by my executors. *Jacob Hege* shall choose out the part to be sold where it will least injure the property. The above mentioned property I will and devise to *Peter Hege,* his heirs and assigns forever, the amount being discharged."

He then proceeded to order a sale of his personal property, and of a tract of land in M'Connel's cave, &c. "Finally, I will that each of my children receive an equal share of my whole estate," &c. and appointed three executors. The will was proved 20th May, 1815.

*Henry Hege* took possession of the part devised to him, and made four payments, and died 16th July, 1820, leaving three children, the plaintiffs in this cause. After his death, the land devised to him was sold by order of the orphans' court for the payment of debts. The petition, order and deed, describe it particularly, as two hundred acres by metes and bounds, being the same devised to him by his father, and it was asked to be sold, and was sold expressly subject to the payment of the remaining sums, to which it was subjected by the will of his father. *Samuel Diehl* was the purchaser. The guardian and executors sold fifty acres of the part devised to *Peter.* After *Peter* came of age, he determined not to take the land devised to him; and his brothers and sisters, and the guardian of *Henry's* children entered into an agreement on the 20th of December, 1822, in which, after reciting the devise to him, it was "mutually agreed between *Peter* and his brothers and sisters, legatees as aforesaid, that the said land so devised to *Peter Hege,* should be sold for the best price that could be obtained for the same, and the money arising from the sale should be equally divided among the children of the said *Christian Hege,* or their representatives, so that the said *Peter Hege,* out of the whole real estate of said *Christian Hege,* shall receive an equal share with his brothers and sisters, and no more:" and then persons are appointed to sell, and the legatees covenant to release to the purchaser.

The land was sold, and the price was, for the purposes of this

12

decision, admitted to be in the hands of those who sold, who are defendants.

On the 9th of March, 1824, the administrators of *Henry* settled their account, and there was a balance in their favour of one hundred and twenty-four dollars, paid in discharge of debts beyond the amount of the personal estate and of the lands sold, and were discharged by the orphans' court, before this suit brought. *Jacob Hege*, one of the defendants, is the surviving executor of *Christian Hege*, deceased.

*Samuel Diehl*, who purchased the land devised to *Henry*, claimed to be entitled to *Henry's* share of the land devised to *Peter*, subject to the payment of six hundred dollars per year, which was to be divided among the legatees, of whom *Henry* was one, in equal portions; and contended that all the interest in lands devised to *Henry* by the will of his father, was sold and purchased by him, *Diehl*. On inspecting the sale on the records of the orphans' court, it is not so. There is no room for dispute; it is the two hundred acres devised to *Henry*, by the will of his father, which is sold. It has been contested whether *Henry's* interest in the land devised to *Peter*, was land or personal estate, in the event of *Peter* refusing to keep it, but it is entirely unnecessary to decide that; for whether it was one or the other, it was not embraced in the application for sale, in the order of the court, nor in the deed. *Henry* was dead, and his land sold, and deed made, in June 1821. *Peter* did not refuse to take till 1822. It would be strange if the orphans' court had ordered a debt amounting to one thousand dollars, and falling due in successive years, in instalments of sixty dollars per year, to be sold at auction. It would be still more strange if a claim of this kind, charged on *Peter's* land, should be transferred by a sale of *Henry's* interest in another and different tract; and that without its being once alluded to in the evidence of that sale. *Diehl* represents *Henry* entirely, as to his interest in the two hundred acres devised to him, because he purchased and paid for that interest, but he does not represent *Henry* as to any thing else devised to him by that will, for the same reason, to wit: that he has not bought or paid for any interest in any part of what was devised to *Henry*, except the two hundred acres of land.

Another point was made, and much discussed, whether this suit could be maintained by the children of *Henry*, or must be brought by his administrators, there being debts yet unpaid; for the administrators of *Henry*, having paid debts of his beyond the assets which came to their hands, stand in the place of the creditors to whom they paid. The debts are the debts of the deceased, as much as if they yet belonged to the original creditor.

In England, lands of a deceased are not charged with the debts, unless of a particular description; here, all lands left by a deceased are liable for every debt of a deceased; there, lands descend gene-

(Hege and others *v.* Hege and others.)

rally to one heir; here, they go to several, if several stand in the same relation to the intestate. There, lands go in one direction, and personal estate is distributed differently. Here, in almost every case, the lands and personal estate go to the same persons, and in the same proportions: all the cases cited in this cause to shew what in England goes to the heir, and what to the executor, are inapplicable to this case. Where debts are unpaid in this country, they are levied equally from lands or goods, stated to be, and actually for this purpose being, in point of law, in the hands of the administrators. Where the lands themselves are to be recovered, the suit is by the heirs. Where debts are to be recovered, or personal property, or damages for breach of contract with the deceased, the administrator must bring the suit. I shall, on this subject, only refer to the case of *Lee* v. *Wright*, in 1 *Rawle*, 149, decided by this court in December term last, in which every thing contended for in this case was considered.

The decision of the court was right on both points, and judgment is affirmed.

GIBSON, C. J.—As I concur on every point but that which regards the right of the plaintiffs to maintain the action in their own names, it is unnecessary to state more of the case than relates to the question. It is thus. A father devises a plantation to each of his sons, *Henry* and *Peter*, on terms of paying a specified price, to be distributed among all his children; and directs his executors to sell the plantation of *Henry* if he should refuse to accept on the terms prescribed, but gives no such direction with respect to the plantation of *Peter*. *Henry* accepts, pays part of the price, and, while *Peter* is a minor, dies, leaving the plaintiffs his children. The guardian of *Peter* enters on the plantation devised to him, and pays part of the price; but *Peter* himself on coming of age, agrees with his brothers, sisters, and the plaintiffs, by writing under seal, to have it sold, "the said legatees," as it is expressed, "getting their share of the purchase money, in satisfaction of what they would have got from *Peter*, under the will." The land is in fact so sold, the price received by the defendants, and the plaintiffs having sued for their share of it, are met by an objection that the action ought to be in the name of their father's administrator.

It does not appear whether *Peter*, on coming of age, accepted or rejected the devise. That he was concluded by the election of his guardian will not be pretended. The doctrine is accurately stated in *Brown* v. *Caldwell*, (10 *Serg. & Rawle*, 114,) where it was held that the act of a guardian, in agreeing to what in this state is popularly called a consentable line, may be avoided by the ward immediately on his coming of age. Either, then, he accepted, or he did not. If he accepted, the estate became absolute in him, and he became, personally indebted for the price of it to his father's executors, to whom alone recourse could be had by *Henry*, or, so far as might be

necessary for the payment of his debts, by his administrator. If *Peter* became indebted to the executors, the money was demandable *by them*, for payment of his father's debts, and distributable to the administrator of *Henry*, by them alone. But without an interest *in the land*, neither *Henry* nor his administrator could make pretence to an action for the proceeds of it. The utmost that the administrator could insist on, would be that no agreement of the plaintiffs with the other legatees should prevent him from recovering from the executors as much of *Henry's* share of the money owing by *Peter* as would enable him to pay *Henry's* debts; but for all beyond, the defendants would be liable to the plaintiffs by force of their agreement. If then the land vested in *Peter*, the administrator would not have a colour of title to demand any part of the price of it from the defendants.

But what if *Henry*, as he may have done, rejected the devise? The land, in that aspect of the case, fell back into the estate of his father, who died intestate in respect of it, just as if it had not been devised; consequently it descended in the first place to *Henry*, and the other children as tenants in common, and afterwards as regards his estate in it, to the plaintiffs. The interest of *Henry* while he lived, and of the plaintiffs after his death, was *real estate;* and it was THEIR land which was sold by virtue of the agreement. Neither *Henry* nor any one who represents him could claim an interest in the price of it under the will, for neither the land nor the price of it, passed by the will. We have then the naked case of a debt owing, not to the intestate's father, from whom the land descended, but to his children; and from agents who have received the price of their land, in pursuance of an agreement to pay it over to them, notwithstanding which, it is said, the money can be reached only through the administrator of their father, because it may possibly be needed to pay his debts.

When the children of an intestate have sold that which descended from him, I believe it has never been understood that either the administrator or the creditors can interpose a claim to the purchase money. The purchaser stands in the place of the children; and the remedy of the creditors is by judgment against the administrator, and execution of the land as a fund into whose hands soever it may have come; or where the administrator interferes by a sale of it under an order of the orphans' court. In the case of a judicial sale, policy requires that a purchaser have a clear title; but the principle has never before been applied to a private sale, which not being under the supervision of a superior power to make a proper application of the purchase money, would in every instance jeopard the security of lien creditors. In fact, a lien would be entirely worthless, if the land were discharged by the sale, and the lien shifted so as to attach it to the purchase money. The present is the case of a private sale, and as well might the widow of *Henry* claim a share

(Hege and others *v.* Hege and others.)

of the purchase money, although her interest is expressly charged on the land with a right to distrain. If then, by force of the intestate laws, the debts be charged on the land as a fund, it would be manifestly unjust to have them paid, in ease of the purchaser, out of the price coming to the children, who sold no more than their interest, and consequently only what might remain after the debts should be paid. On what ground then, could the administrator interpose? That he can have an action in a representative capacity, only for a debt which was owing to the decedent himself, is a common-place principle, for which it would look like affectation to cite an authority; and as the money, when recovered, would not be assets, I can perceive no good reason why he should maintain the action.

Judgment affirmed.