IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## WESTERN DISTRICT—PITTSBURGH 1866.[1]

---

## McLean's Executors *versus* Wade.

1. The jurisdiction of the Orphans' Court is not exclusive of common-law remedies against the estates of decedents.

2. The action of account render is a proper one between principal and trustee or bailiff and receiver, and may be resorted to as between the representatives of the agent and his principal.

3. A father without administration received and managed the property and money of a deceased son as agent for his son's child. *Held*, that he might lawfully do so, if creditors did not interfere, and the amount in his hands might be recovered from his representatives in account render by the child.

4. The father made a parol gift of land to his son, put him into possession, and after the son's death received the rents for the child's use, mixing them with other property belonging to her. *Held*, that the father's estate was liable to his grandchild for the rents.

5. Even if the rents were not originally the property of the grandchild, the claim could be sustained as an executed gift by her grandfather.

6. In account render, the jury may assess the amount due, without a formal judgment *quod computet* being first entered; such judgment is implied in the general finding.

ERROR to the Court of Common Pleas of *Crawford county*.

This was an action of account render, issued June 13th 1856, by Thomas M. Wade and Mary G. Wade, his wife, in her right, against James G. McLean, William McLean and Anderson McLean, executors, &c., of Daniel McLean, deceased. The plaintiffs in the 1st count of their declaration averred, that Mrs. Wade was seised in fee of a tract of 100 acres of land, and that the decedent for twenty-five years had the care of the premises, to receive the rents, &c., as her bailiff, and render an account, &c.;

[1] The first four Pittsburgh cases were decided in 1865.

that he received all the rents, &c., and had refused to render an account. In the 2d count it was averred, that the decedent was bailiff of Mrs. Wade of certain goods, chattels and moneys to render an account, &c., which he had refused to do. At the trial, February 20th 1862, another count was filed by leave of the court, substantially like the 2d count, but specifying the kind of chattels.

The testator was the owner of a farm of 100 acres adjoining his homestead, on which he had placed his son John; who lived on it till he died in 1833, leaving a widow and one child, now Mrs. Wade, one of the plaintiffs, who, at the time of her father's death, was about six months old. About four years afterwards the widow married Dr. Guthrie, and was dead at the institution of the suit. There was evidence that the decedent had pointed out the farm and the line-fence, and said, he had given it to John before his marriage; that John had built a spring-house and had done other improvements; and had worked on the farm whilst he, the testator, was spending money for his other sons; after John's death he called it "Mary's (Mrs. Wade's) farm:" that John on his death-bed told his father, that he had not made him a deed for the farm; and he replied, "I know I have neglected to give you a deed for the farm I have given you, but I wish you to make a statement of how you want your affairs managed, and I will carry it out to the letter;" and that John then told him to take care of the property for his wife and child: that after the death of John, he had taken his personal property into possession, had kept some at the appraisement, had sold some, and taken notes in the name of "the heirs of John McLean:" that "he had rented her (Mrs. Wade's) farm," and after repairs and taxes had put the balance at interest for her use. The decedent had, with the consent of the mother, taken her, at about seven years of age, to live with him— agreeing, that she should be no charge to the estate during her minority:" he had also said, that he did not take out administration as it was a family matter, and would save costs; and he would take care of it for the use of John's wife and child; that he "kept the money of John's heirs separate from his own." In 1837 he paid the widow of his son her interest in her husband's estate in full.

James Glover, the grandfather of John, by his will, dated May 6th 1843, had given to Mrs. Wade, equally with the brothers and sisters of her father, a lot in Pittsburgh.

Daniel McLean died in May 1855, and by his will and codicil gave to his son James the farm John had occupied, on condition that he paid Mrs. Wade $1300, by conveying to her his interest in the devise of his grandfather at $600, and the remainder in annual payments of $100. James tendered to Mrs. Wade an assignment of his interest under Glover's will, in fulfilment of the condition of his father's devise to him; she refused to accept it.

[McLean's Executors *v.* Wade.]

The defendants submitted a number of points :—

1. An executor *de son tort* is not a trustee for the heirs of an intestate, so as to enable them to sue him for goods, &c., of the decedent, or their proceeds.

2. The heirs cannot proceed for the estate except in the Orphans' Court.

3. The defendant is not liable to plaintiff in account render for her distributive share.

4. To support this action, there must be a contract with testator on a sufficient consideration, of which there is no adequate proof.

5. If the assets came into the testator's hands as administrator, the defendants are liable only in the Orphans' Court.

6. If the assets came to the testator's hands as bailiff, &c., it would be for the joint benefit of the widow and daughter, and the plaintiff is not entitled to an account in this case.

7 and 8. The defendants are liable in a common-law form of action only to the representatives of John McLean, to whom on his death his personal estate passed.

9. The defendants are not liable for the rents, &c., no title to them being shown in the plaintiff, and no consideration to support a contract.

10 and 11. The plaintiffs can in no event recover any other judgment than *quod computent;* but if she can recover a specific sum, it can be but two-thirds of the amount received by the testator.

The court (Johnson, P. J.) affirmed the 1st point and denied the others ; he said in conclusion: "We decide, then, that Daniel McLean having received by his own volition money belonging to the plaintiff or which he called hers, and farmed it out as hers for more than twenty years for her benefit, in pursuance of a previous undertaking so to do with her deceased father, he and those representing him are now estopped from saying it was not hers, and are liable to be called on to account. If liable to a judgment *quod computent* under the pleadings, the jury may then go on and liquidate the amount due from them."

The jury found for the plaintiff $1977.54.

The errors assigned were the answers to the points, and charging that the jury might liquidate the amount due.

*G. Church,* for plaintiffs in error, cited Act of April 22d 1856, § 4, Purd. Dig. 497 ; Barnet *v.* Dougherty, 8 Casey 371 ; Sample *v.* Courson, 9 W. & S. 62, 66 ; Act of April 8th 1833, § 2, Purd. Dig. 562, pl. 7 ; Lee *v.* Gibbons, 14 S. & R. 110 ; s. c., 1 Rawle 149 ; Humphreys *v.* Humphreys, 3 P. Wms. 349 ; Shollenberger's Appeal, 9 Harris 342 ; Gratz *v.* Phillips, 5 Binn. 568.

*Finney & Douglass,* for defendant in error, cited McFadden *v.*
Sallada, 6 Barr 284; Lee *v.* Gibbon, 14 S. & R. 105; Moses *v.*
Murgatroyd, 1 Johns. Ch. 118; Tritt *v.* Crotzer, 1 Harris 455;
Brown *v.* Dysinger, 1 Rawle 408; Denison *v.* Goehring, 7 Barr
175; Bredin *v.* Kingland, 4 Watts 420; Johnston *v.* Humphreys,
14 S. & R. 395; Act of April 4th 1831, Purd. Dig. 29; McFad-
den *v.* Erwin, 2 Wh. 37.

The opinion of the court was delivered, October 26th 1865, by
THOMPSON, J.—The acts and admissions of the defendant's
testator, it seems to us, were quite sufficient to justify the finding
of the jury that he had taken upon himself to act in the capacity
of agent or bailiff, in regard to the estate of his infant grand-
daughter, the meritorious plaintiff below. His declarations go
to show that he undertook the relation at the request of his son,
when the latter was on his death-bed; and he admitted it at all
times afterwards, both by acts and declarations. The *cestui que
trust,* the granddaughter and her husband, affirm the relation by
instituting this action of account render to adjust the accounts
growing out of the relation. I see not, therefore, upon what
principle his personal representatives can be heard to assert a
different relation, and that their testator must be regarded as an
executor *de son tort,* an unauthorized intermeddler with his son's
estate. As will be seen, we think, there was evidence to estab-
lish the relation of trustee and *cestui que trust,* and that the law
will sustain the remedy adopted under it.

The jurisdiction of the Orphans' Court is not exclusive of
common-law remedies against the estates of decedents. They
are not often resorted to, nor needed, but they exist, as we held
in Sergeant's Executors *v.* Ewing, 6 Casey 75, where an action
to recover a judgment for a debt against the executors was held
not to be excluded by the Orphans' Court's jurisdiction of the
accounts of the personal representatives. The action here is a
proper one between principal and trustee or bailiff and receiver,
and why may it not be resorted to as between the legal represen-
tatives of the agent and his principal? It deprives neither party
of any right, nor gives advantage to either over the other. Its
powers admit of the fullest investigation of the accounts between
the parties, and it may admit of some doubt if the remedy would
or could be so ample in such a case in the Orphans' Court. But
this need not be insisted on in order to sustain this action. It is
enough to hold that it is not excluded by the jurisdiction of the
Orphans' Court. The testator undoubtedly received and man-
aged the property and moneys of the estate of his deceased son
as agent for his granddaughter, without administering. This he
might do if creditors did not interfere, and in process of doing
so, for a long period of years, accounts would necessarily have

to be kept and finally settled with the party for whom he assumed to act, and for that purpose this suit was instituted, and we think the learned judge was right in overruling the objection to it interposed by the executors.

We have another question, and that involves the plaintiffs' right to sue in their own names without administration in a case circumstanced as this is. Undoubtedly the estate of a decedent descends to his heirs at his death, subject to the claims of creditors and the laws in force for administering it. But if there be no debts and no distribution needed, and only a solitary heir, administration would seem to be useless. In this case I see no reason why the heir may not assert her rights. Indeed, this point was decided in Lee *v.* Wright, 14 S. & R. 105, and in Same *v.* Same, 1 Rawle 149. This suit was instituted by the heir some twenty-six years after the death of her father. After such a lapse of time, and in the absence of any evidence to countervail it, there is a conclusive presumption of the payment of every species of debt which might have existed against the estate of her father at his decease. This being so, the authorities cited seem to settle 'the point in favor of the maintenance of this action, there being no creditors.

Nor do we discover any error in the answer of the learned judge to the defendant's 9th point. Only the rents received expressly for the use of the heir, and mixed with other money of hers, are included in the suit. The title to the realty was not in question. The difficulty in the way of her claiming the rents, conceding the want of title to the land, is easily answered. The only person in the whole world who had the right to dispose of them as he pleased was the defendant's testator, and he chose to consider them part of her estate, mixed them with her other moneys, and invested the whole for her use in the name of the "*heirs*" of her deceased father, she being the only one. He had his reasons for this, no doubt beyond even the feelings of natural love and affection. He had made a parol gift of the land to his son, or at least put him into possession of it, and he held and improved it with the understanding that his father would give it to him; and clearly intimated the same design towards his granddaughter for a long time; eventually, however, he made a different disposition, and a different provision for her, but he never attempted to recall his investments in this or any other particular, made for her with what he admitted was her money. If this was not sufficient, and it was necessary, in order to sustain this portion of the claim, it might be done on the principle of an executed gift in her favor; for the securities taken in making the investments were in the names of the "heirs" of John McLean, deceased, and she, as already said, was the sole heir. It is more probable, however, that they were collected and in-

[McLean's Executors *v.* Wade.]

vested under the original idea that they issued out of an estate that was destined for her. However this might have been, the executors, we think, ought not to be heard to gainsay what was deliberately done by their testator, especially as creditors were not complaining in regard to the matter, even if they might do so. There was no error in this part of the case, we think.

Something was said about the necessity of joining the representatives of the widow as plaintiffs in the action. We need look no further for an answer to this objection, than that no one claims anything on account of her. Besides, it appears that the defendant's testator paid off her interest in the estate in 1837, and took her receipt in full.

The last objection to be noticed regards the regularity of the judgment. There was no formal judgment of *quod computet* entered before the assessment of the damages. We think that under the Act of the 4th of April 1831, a formal judgment of *quod computet* was not indispensable. It provides that when an action in account render is being tried before a jury, and they find a liability to account, they may assess the damages, or, in other words, settle the accounts between the parties, and find in favor of one or the other of them, as they may conclude from the evidence to be right. In such proceeding the substance of the judgment *quod computet* is impliedly embraced in the general finding: McFadden *v.* Erwin, 2 Wh. 37. There is no error in this part of the case, nor do we discover anything to correct in any of the numerous matters claimed to be error, or that needs any further special notice.

Judgment affirmed.