## No. 10,151.

### MRS. BERTHA LEVY vs. JULIUS HITSCHE.

Under the law in force antecedent to the adoption of the present Constitution, courts of probate had jurisdiction of actions for the partition and settlement of community rights and property and in which the heirs and legal representatives of a deceased spouse seek to ascertain, establish and recover a share in the active mass of the community.

The Second District Court of the parish of Orleans, as it existed at that time, was vested with exclusive jurisdiction of *probate matters*, and consequently of suits for the partition of community property *in liquidation* and not in possession of major heirs, as the co-proprietors thereof.

After the intent and meaning of a law has been *settled* by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the law as the text itself, and a change in the construction is the same in effect on contracts as an amendment of the law, by means of a legislative enactment.

APPEAL from the Civil District Court, Parish of Orleans.
*Tissot*, J.

*White & Saunders* for Plaintiff and Appellee.

*Henry P. Dart* for Defendant and Appellant.

The opinion of the Court was delivered by

WATKINS, J.   This is a suit to compel the defendant to accept title to a piece of real estate described in the petition, and to which he makes the following objections, viz:

First.   That it is derived through certain partition proceedings had in the Second District Court of the parish of Orleans, wherein one succession obtained a decree against another, ordering a partition in kind; and that said court was without jurisdiction to entertain and decide it.

Second.   That, to said partition proceedings, the universal legatees, nominated in the will of the deceased defendant, were necessary parties, and were not cited; or, if they were cited, no judgment by default was taken against them antecedent to the rendition of final judgment.

The case was submitted on an agreed statement of facts, and from an adverse judgment the defendant has appealed.

The pertinent facts disclosed by the record are as follows:

Ann Hugh and John Hugh were partners in community, and, at the death of the former, on the 4th of December, 1875, the assets thereof aggregated in value $11,500.

On the 10th of December following her succession was opened in the Second District Court of the parish of Orleans; her will admitted to probate; an inventory—which consisted exclusively of an *undivided one-half interest* in the community property—was taken; and her testamentary executor qualified.

Her will bequeathed special legacies amounting to $3,700, and bestowed the residuum of her estate on certain universal legatees, all of whom were minors.

Contemporaneously with the mortuary proceedings, John Hugh, the surviving partner in community, was interdicted by a judgment of the Second District Court, and a curator was appointed and qualified.

An inventory was taken of his share in the community property, as his only estate.

This consisted of about $6000 worth of real estate and $5000 of money, and rights and credits.

On the *4th of November*, 1876, the curator brought suit in the Second District Court against Mrs. Hugh's executor for a partition of this community property.

On an exception of the executor to his capacity to stand in judgment alone, the curator filed a supplemental petition demanding that the special and universal legatees be cited. Some of them appeared and answered, but others did not.

Neither the record, or the court docket, shows that any judgment by default was entered in the case against those not answering.

Neither John Hugh or Ann Hugh left any forced heirs at the latter's death.

Judgment decreeing a partition in kind was rendered *on the 11th of June*, 1877; the proceedings had thereunder were regular and formal; and, in pursuance thereof, a partition of the effects of the community was made in presence of a notary.

In the partition in kind the allotment was as follows:

a.  To the Interdict John McHugh, two pieces of real estate,

    $2800 00 and $1200 00 ............................. $4,000 00
    Money ................................................ 1,997 64½

            Total ........................ ................. $5,997 64½

b.  To the succession of Mrs. Ann McHugh, one piece of

    real estate ......................................... $2,800 00
    Bonds, etc .......................................... 345 00
    Money ............................................... 2,852 64½

            Total .............................. ............ $5,997 64½

This partition was duly homologated and executed.

The interdict died in 1881, and his succession was opened in the Civil District Court.

The piece of real estate in contestation now was acquired by his estate while in charge of the curator; after his succession was opened it was sold under an order for its sale to pay debts; and from the proceeds of sale realized, his individual debts were paid, and, also, one of the debts of the community, which was for taxes of 1875—the year in which Ann Hugh died.

After his debts were paid, nothing remained for distribution among his collateral heirs.

The property that was allotted to the succession of Ann Hugh, in the partition, was insufficient to discharge its debts and *special* legacies, and the latter prorated on the proceeds remaining in the hands of the executor. There was nothing applicable to the bequests in favor of the universal legatees.

I.

On this state of facts, the abstract legal question is raised, as to the lack of jurisdiction in the Second District Court, under the constitution and laws then in force, to entertain and decide that partition suit.

From 1854 to 1880 the Second Court of the parish of Orleans had exclusive cognizance of all probate proceedings therein. No change in the law took place, in this respect, under the Constitution of 1868. *Vide* Act 80 of 1869.

The reorganization of the district courts of the parish of Orleans, under the present constitution, resulted in the abolition of the Second District Court, and its jurisdiction and power were vested in the Civil District Court of said parish.

It is of first importance, therefore, to make an examination of the jurisprudence of that period, in connection with the articles of the codes confering *probate* jurisdiction on the courts, in order to get a clear idea of the question in dispute.

The Code of Practice provides that " courts of probate shall have exclusive power     *     *     *     to ordain and regulate all partitions of successions in which minors, interdicted or absent persons are interested, or even those which were made by authority of law, between persons of lawful age and residing in the State, when such persons cannot agree upon the partition, and the mode of making it.   Article 924, par. 14.

It also provides that " all partition of succession property shall be made by the court of probate of the place where the succession is opened.   Ib. 1022.

These articles have been the subjects of frequent adjudications by our *early* predecessors, from which we have selected the following extracts :

In 7 N. S. 469, *Gosselin vs. Gosselin*, the court said:  " By the Code of Practice article 924, paragraph 14, the court of probate has exclusive jurisdiction of *partitions*.

" This code was approved in 1824, and after its approbation, but be-

fore its promulgation, the Legislature, by an act of 1825 (p. 122, sec. 3), gave to the District Court jurisdiction of *suits* for partition.    *    *    * Thus, the jurisdiction of the court of probates, which was *exclusive* in cases of partition, by the Code of Practice, was rendered *concurrent* only by the act of 1825, posterior to the approbation of the Code by the government, anterior to its promulgation."

In many subsequent decisions their successors maintained the *concurrent* jurisdiction of the *ordinary* and *probate* courts in partition *suits*, while *all* upheld the *exclusive* jurisdiction of the courts of probate, in all other respects. 3 N. S. 172, Gauge vs. Gauge; 6 La. 420, Hooke vs. Hooke; 2 Ann. 150, Craighead vs. Hynes.

This resulted in a line of demarcation being drawn between the character of partition suits which could be brought, in each respectively.

Hence, we have the provision of the Civil Code that actions for " partitions between *co-proprietors* of the same thing    *    *    must be brought before the judge of the place where the *property to be divided is situated,*" (R. C. C. 1290, 1304,) as contradistinguished from those of C. P. 1022, above quoted; but which did not interfere, in any wise, with those of C. P. 924, par. 14.

The adjustment of the jurisdiction of the ordinary and probate courts, in matter of partition, under those textual provisions, was attended with difficulty; but it was effectually accomplished, and the jurisprudence settled.

One of the questions on which most pungent discussions arose, during this process of adjustment, was whether or not an action for the partition of community property, between the survivor and the heirs of the deceased spouse, should be brought in a court of ordinary or probate jurisdiction.

In the case of *Babin vs. Nolan* it arose, and was decided; and, in the course of their argument, the court took occasion to review the jurisprudence, and pronounced their opinion in the following unmistakable terms:

This " is essentially an action for the settlement and partition of the community, in which the plaintiff, in the right of his sister; who was the defendant's late wife, seeks to ascertain, establish and recover the portion to which the deceased was entitled in the active mass of the community; and, ever since the decision of the court in *Turner vs Collins* (1 U. S. 370), courts of probate have been repeatedly and uni-

formly recognized in our own jurisprudence, to have jurisdiction, if not exclusive, at least concurrent with the district courts, in such cases.

"In the case of *Broussard vs. Broussard* (3 U. S. 37), which originated in a suit instituted by the heirs of the wife against the (surviving) husband, for the division of the community property, the *concurrent* jurisdiction was positively recognized. And so again it was decided in 3 N. S. 172; 7 N. S. 470; 9 La. 584." p. 278.

That principle has been affirmed in the following cases, viz: 17 La. 246, Lawson vs. Ripley; 1 R. 149, Griffin vs. Waters; 1 R. 512, McCalloin vs. Palmer; 23 Ann. 637, Walker & Vaught vs. Kimbrough.

It must be borne in mind, however, that those decisions do not impeach the authority that is conferred on probate courts by C. P. 924, par. 14, which has been considered, and treated, as vesting them with jurisdiction of "*partitions* in which *minors* are interested," independently of the property to be divided.

We find in *Craighead* vs. Hynes, 2 Ann. 150, a terse and forcible expression of this view, and which was expressed in the following terms, viz: "By Section 14 of Article 924 of the Code of Practice courts of probate had power 'to ordain and regulate all partitions of successions in which minors, interdicted or absent persons are interested; or even those which are made by the authority of law between persons of lawful age and residing in the State, when such persons cannot agree upon the partition, and the mode of making it.' By a subsequent act jurisdiction was given to the district courts.

"Our impression is that, under the latter clause of the above section, courts of probate have jurisdiction *in cases of partition in which minors are concerned.*"

While, on the other hand, it has been frequently decided that, in case a succession has been fully administered by a testamentary executor, tutor, curator, or administrator, and the heirs, all of whom are majors, have come into the possession of the *residuum*, as an inheritance, or the same has been unconditionally accepted by them, the probate jurisdiction over the property ceases, and the co-proprietorship of *such* heirs supervenes. 4 R. 20, Babin vs. Dodd; 6 N. S. 519; 4 L. 202; 5 La. 384; 10 La. 18; 11 L. 359; 4 R. 412; 21 Ann. 364.

And particularly in the cases decided by our immediate predecessors, viz: *Woolfolk* vs. *Woolfolk*, 30 Ann. 139; and *Freret* vs. *Freret*, Ib. 506.

This lengthy and careful examination of adjudicated cases would not have been necessary but for the opinion expressed in the case of

*Boutté* vs. *Boutté*, 30 Ann. 181, and that of *Buddecke* vs. *Buddecke*, 31 Ann. 572, in which a contrary doctrine was announced by the Court. The former is diametrically opposed to the theory announced in *Craighead* vs. Hynes; and the latter is equally opposed to that in *Babin* vs. *Nolan*, quoted *supra*.

The facts in the Boutté case were that Charles and Francois owned in indivision a valuable property in this city. Charles died, leaving thirteen children; and, subsequently, Francois died, leaving a widow and thirteen children—some of the children of each being minors. The latter left a will, and the appointed executor qualified and took possession of his estate.

*Nine* of the heirs of Charles were the plaintiffs and the remaining *four* and the executor of Francois were the defendants in a suit in the Second District Court for the partition of that property. The question of the jurisdiction of the court was not raised by the counsel of either party, but the court, on its own motion, said:

" Here is not a succession to be settled, and property, exclusively its own, to be partitioned among the heirs of that succession.   *   *   *

" The Second Court had not jurisdiction of the action, just as it is without jurisdiction of an action of partition between two individuals who are *majors*, and own property in common in their own right."

The heirs of neither decedent were in possession of the property as proprietors; the succession of one was under administration in the Second Court at the time; each decedent left minor children, and one a surviving widow, interested in the property which was the subject of adjudication.

The state of facts on which the opinion of the Court in the Buddecke case was predicated are that the matrimonial community existing between Christian T. Buddecke and his wife was dissolved by the death of the latter, the former and eleven children surviving, three of the latter being minors.

The deceased left a will which was probated in the Second Court. One of the major heirs of the deceased instituted suit against her father and brothers and sisters, in the Fifth Court, for a partition of the community, and it was ordered to be sold in order to effect a partition. When the title was subsequently tendered to the purchaser, he objected to it on the ground that the court had no jurisdiction to order the partition sale, and he was ruled to accept it. The Court said:

" We are surprised to learn that the decision (in Boutté vs. Boutté)

upset opinions of some of the profession on the matter of jurisdiction, upon which their practice had been based.

"That decision but followed the old and beaten path. Forty years ago the same rule was expressly laid down by this Court in a case which has been ' reported,' in the legal sense of that word, and from the reporter's statement of the facts, we know the whole history. Henry vs. Krays, 12 La. 214."

From a critical examination of those two opinions, it will appear that each stands alone, and is unsupported by *pertinent* authority.

In the former *no* opinion is cited, and in the latter only that in Henry vs. Krays.

In that case, suit was brought to annul a judgment of the district court, ordering a partition of property of a deceased sister between her surviving brother and sister, both of whom were of *full age* at the time.

It will appear that one of the determinative factors in that case was the claim made by the plaintiff in the partition suit to one-fourth interest in the property to be partitioned by virtue of a donation, and another was a claim set up by the defendant therein for a share of the same by virtue of a sale.

On the facts of that case the Court said, in regard to the jurisdiction : " The Court of Probates, on the contrary, can exercise no power not expressly given to it by statute, and is, therefore, of limited jurisdiction. By the Code of Practice, the authority of that court is exclusive to ordain and regulate partitions of successions, *even among persons of lawful age* and residing in the State, when they cannot agree upon the partition and the mode of making it. Under this grant of authority, this Court has thought that the Court of Probate might well act upon certain questions arising incidentally in the course of the partition, which would more properly belong to the ordinary jurisdiction, if presented separately, etc." * * *

But "the authority of the district court to ordain and regulate a partition of property, held in common by *other title than hereditary succession*, at the suit of the *co-proprietor*, can hardly be questioned at this time."

Instead of these views giving any support to the opinion expressed in the Buddecke case, in our conception, they are precisely in line with prior and subsequent adjudications herein cited by us.

The sole ground on which the Court sustained the jurisdiction of the district court was that as to the pretensions of the plaintiff based on a donation—she was a *stranger* to the succession, and not an heir.

That was an appeal brought up from the first judicial district, outside of the parish of Orleans, and there was no minor or interdicted person interested in the property partitioned.

While we are at all times desirous of following the decisions of our predecessors, and feel ourselves instructed by their wisdom and learning, yet, in a situation like the present, we feel constrained to adhere to those decisions which were rendered during a *regime* in which the controversies they acted on were living and vital, and the court whose jurisdiction is questioned, was still in existence.

Indeed, the jurisprudence of that time constituted a rule of property on which titles to real estate were adjusted, and to disturb it now, that the court, on whose order the property was partitioned, had ceased to be, would be straining a legal technicality too far and to no useful purpose.

In a recent case this Court said:

"A familiar rule is that judicial construction of statutes becomes incorporated in it." Hawkins & Roberts vs. Beer, 37 Ann. 55.

In Ohio Life Insurance Company vs. Debolt, 16 Howard, 431, Chief Justice Taney, as the organ of the Court, said:

"And the sound and true rule is, that if the contract, when made, was valid by the law of the State, as *then expounded* by all the departments of government *and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent act of the Legislature of the State or decision of its courts altering* the construction of the law."

In the Douglass vs. County of Pike, 101 U. S. 677, the late Chief Justice Waite announced the same principle in even more perspicuous language:

"The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights, that would be given to a legislative amendment; that is to say, make it prospective and not retroactive.

"After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change in the decision is, to all intents and purposes, the same in effect on contracts as an amendment of the law by means of a legislative enactment."

In State vs. Thompson, 10 Ann. 122, Mr. Justice Spofford stated the rule in this wise:

" Whatever might be our impression, were the matter *res integra*, we deem it important, in the construction of statutes, to adhere to what has already been adjudged. The judicial interpretation becomes, as it were, a part of the statute, and should not be changed but for the most cogent reasons."

We feel constrained to follow the jurisprudence as it was established by this Court, at a time when the Second Court was in existence, and to give a like interpretation to the law defining its jurisdiction.

It is not our purpose, nor do we deem it necessary, to any more specifically overrule the decisions in Boutté vs. Boutté and Buddecke vs. Buddecke. We simply decline to follow them because we think they are departures from the established jurisprudence, with reference to the jurisdiction of the Second Court in partition matters, and which jurisprudence constituted and is a rule of property that cannot be altered to the prejudice of titles which were adjusted and settled thereunder.

II.

With respect to the defendant's second- ground of complaint—the absence from the record of the partition proceedings complained of, of a judgment by default—it is sufficient to say, that it appears, from the record, that the universal legatees of Mrs. Ann Hugh took nothing by the bequest, her succession proving inadequate to meet her debts and special legacies. It further appears that some of the legatees appeared and answered plaintiff's demands. We cannot regard this objection . as serious. *Omnia rita acta* may well be applied to the action of the judge of the Second Court.

We are of the opinion that the judge *a quo* decided correctly. Judgment affirmed.