Statement of the Case.
MONROE, J.
The plaintiff, as the holder of two shares of stock in the defendant company, filed a petition in the civil district court, setting up mismanagement and misappropriation of funds, and praying that a receiver be appointed. As a more particular cause of complaint, she alleged that the management of the company was controlled by Maurice J. and Samuel J. Hart, who had been the agents of Judah Hart; that whilst acting in such dual capacity they had loaned about $100,000 of the money of the company nominally to Judah Hart, but in reality to themselves, upon a pledge of certain stock of the company, standing in the name of Judah Hart, but which belonged to them, the practical effect being the transfer of their stock to the company at par; that Judah Hart had died, leaving Samuel J. Hart and Helen H. Hart, wife of Maurice J. Hart, as his heirs, and that after accepting his succession, and thus making themselves liable for its debts, they had gone into bankruptcy in New York, making a surrender of practically worthless, property, including the stock of the defendant company, which had been pledged to it to secure the aforementioned loan of $100,-C(00; and that the said Maurice and Samuel I-Iart and others were arranging to so make use of the claim of the company against said bankrupts as to secure their discharge. In the proceedings thus instituted, G. Ad. Blaffer, really acting for the Germania Savings Bank, owner of 50 shares of the defendant’s stock, and represented by Buck, Walshe & Buck as his attorneys, intervened and joined in the prayer of the plaintiff’s petition; and Abraham Rosenfield, Charles Mendelsohn, William Garig, and others, also owners of stock in said company, intervened to oppose the same. Upon the hearing of the application, the plaintiff was represented by Messrs. Lazarus & Luce, as well as by Mr. H. M. Ansley, who had signed her petition, and the following admission was placed of record:
“By Mr. Parrar, representing the Defendant Company: I summoned Mrs. Schwartz here, and Mr. Harry Hall; and Mr. Lazarus said that he would admit what I expect to prove by them, if it was admissible — that Mrs. Schwartz brought this suit at his suggestion, and that he had been employed by the estate of McDonald to contest the Hart insolvency in New York. Are those the facts? By Mr. Lazarus: Yes, sir; I don’t think that the evidence is admissible. It is the truth. I have no desire to conceal it. I advised Mrs. Schwartz to bring the suit after she got her stock, and I advised the Germania Savings Bank to join in; and I represent Mr. Harry Hall, the executor of the estate of McDonald, and I represent the other creditors, out of whom I expect to-make my money.”
In order to complete this portion of the statement of the case, it may be noted here that' the estate of McDonald, of which Harry H. Hall was the administrator, • was the judgment creditor of the estate of Judah Hart, and hence of the bankrupts, Samuel J. and Helen Hart, in the sum of $66,150.48. And for the same purpose we make at this, time the following excerpts from the testimony of Mr. Luce, of the firm of Lazarus & Luce, given at a later stage of the litigation, to wit: “Q. Were you employed by Mr. Hall in this matter, Mr. Luce? A. We were em *622 ployed by Mr. Hall, but Mr. Hall said that he had no funds or [for] expenses to carry out such a contest, and consequently we were bound to secure the funds and expenses from the Rosetta Gravel Paving & Improvement Company. Q. Who did Mr. Hall represent? A. He represented Mr. R. T — He was the administrator of the estate of R. T. McDonald in this court, and had a claim for some $66,000. Q. Against whom? A. Against Samuel J. and Helen H. Hart. Q. If I understand rightly, you were employed by Mr. Hall to defend the interest of Mr. McDonald as against the Harts? A. We were not only employed by Mr. Hall, but by the Germania Savings Bank and several others, and we didn’t file the specifications in any form, except for Mr. Hall as administrator. Q. When were you employed by Mr. Hall — before or after the receivership? A. I think— I don’t know. I think we had this claim in our hands before the receivership. * * * Q. And you took this proceeding in order to try to collect that judgment? A. At that time we had control of that judgment, as well as the claim of the Germania Savings Bank, and some five or six other claims. Q. And you brought this suit in the name of Mrs. Schwartz, who represented two shares, in order to attack the Hart interest in the Rosetta Gravel Paving & Improvement Company, did you not? * « * A. We brought the suit in the name of Mrs. Harriet Schwartz, as a stockholder, to provoke the appointment of a receiver. That suit had nothing in the world to do with the bankruptcy proceeding. Q. Was it not directly or indirectly to attack the interest of the Harts, if any they had, in the Rosetta Gravel Paving & Improvement Company? A. I don’t think that that concerns the issues of this case — as to whether it was to attack the interest of the Harts or not. The pleadings show * what it was for, and the evidence shows that the charges made in the pleadings were sustained.”
The witness goes on to say that the estate of Judah Hart and Samuel J. Hart and Helen H. Hart owed the paving company over $100,000, and that the opposition to the discharge of the two latter in bankruptcy, made in the name of Harry H. Hall, administrator, but the .expense of which is ehárged to the paving company, was made with the idea that the results would inure to the benefit of the company, as well as to that of the other creditors of the bankrupts.
Returning now to the facts, in their chronological order, the application of the plaintiff resulted in the appointment of Peter Stifft as receiver for the paving company, and he was thereupon authorized to employ Messrs. Lazarus & Luce as his attorneys. Upon December 4, 1900, he presented a petition to the court, setting forth the condition of affairs as between the company and the bankrupts, Samuel J. and Helen H. Hart, alleging that Charles Mendelsohn held a power of attorney to represent the company in the bankruptcy proceedings, and praying that the same be revoked, and that J. N. Luce be authorized to represent the company at the meeting of creditors, and to vote upon the selection of the trustee, “and upon such other matters as may [might] be brought before said meeting, as well as any other matters as may [might] be necessary in furtherance of the interests of said company.” And an order was made in accordance with the prayer of the petition. Upon January 21, 1901, the receiver presented to the court another petition, alleging that it was necessary for him to borrow money in order to “pay court costs and the expenses of the litigation” connected with the receivership; alleging the indebtedness of Samuel J. and Helen H. Hart to the company, and their bankruptcy in New York; further alleging that “petitioner has already incurred costs and expenses in the shape of court costs, traveling expenses of counsel to and from New York, and costs of taking testimony in the examination of said bankrupts in the creditors’ meeting, and that it is necessáry that his counsel also attend the meeting of creditors in said bankruptcy, to be held before the referee in bankruptcy in New York on January 28, 1901, to oppose the discharge of said bankrupts (the opposition and specifications having already been filed), to participate in the creditors’ meeting, and secure the election of a trustee, and to discover and disclose concealed property of said bankrupts, in order that a dividend may be realized upon the debt due said corporation”; further alleging that, “in order to make proper efforts for the collection of said claim, and to carry on the litigation incident thereto, it will require the sum of five hundred dollars, to *624 cover said costs and expenses”; and praying that he be authorized to borrow that amount. And he was so authorized.
Upon February 8, 1901, in view of the fact that there had been an attempt to take an appeal from the order appointing the receiver, and hence a doubt had arisen as to whether the order made on the petition filed December 4, 1900, would answer the purpose for which it was intended, another petition of like character was presented, and a similar order, naming J. N. Luce or C. A. Burbank as the representative of the company, was made.
' Later still the receiver presented a petition alleging that among the assets of the corporation were a number of claims for paving, secured by liens, some of which had been pledged to the Louisiana National Bank; that it was to the interest of the receivership that he should be authorized to compromise them; and that, as to the claims pledged to the bank, that corporation was willing that he should do so, provided he accounted to It for the proceeds. And he was authorized accordingly. •
In July, 1901, the receiver filed an account showing that, including $4,840.30 collected on the claims pledged to the bank, and including also the $500 borrowed by the authority of the court, there had come into his hands $8,837.32, out of which he had actually disbursed in the payment of claims to which privileges were accorded the sum of $5,331.-01; further showing that he proposes to pay other claims, to which he accords privileges, to the amount of $2,543.60, and that there is a balance still due to the bank amounting to $3,323.94. Among the items which appear to have been paid are the following:
Farrar, Jonas & Kruttschnitt, attorneys for the Louisiana National Bank, on account of collections from paving liens pledged............... $662 53
Lazarus & Luce, for various and sundry expenses, railroad fare, travel-ling expenses, fees of referee and stenographer, in the matter of the bankruptcy of Samuel J. Hart and Helen II. 1-Iart, in the United States District Court for the Southern District of New York, and for costs and expenses in various suits pending in the parish of Orleans ................ 953 38
Lazarus & Luce, on account, commismissions for collecting paving certificates pledged to La. Nat. Bank.... 234 79
And among those which the receiver proposes to pay we find:
Lazarus & Luce, Buck, Walshe & Buck, and H. M. Ansley, services in proceedings to secure appointment of receiver, and in appeal and mandamus proceedings, Supreme Court ......................... $1,000 00
Lazarus & Luce, services in matter of bankruptcies of Samuel J. Hart and Helen H. Hart; the Rosetta Gravel Paving & Improvement Company having a claim of about $100,000 against said bankrupts, and to which Lazarus & Luce have devoted considerable time and attention, making several trips to New York ..................... 750 00
Lazarus & Luce, services in case City v. Rosetta Gravel Co., said suit being to annul paving certificates, and liens on Canal street, and for damages in the sum of $37,000....... 500 00
This account was opposed by Mrs. A. Rosenfield, Miss R. Rosenfield, and William Garig; and there was judgment on this opposition rejecting certain items of costs expended by the receiver in connection with the Hart bankruptcies, and, in so far as concerns the amounts paid or credited to Lazarus & Luce, reducing the item of $953.38 to $500, disallowing the item of $750, and further as follows:
“The item, Buck, Walshe & Buck, Lazarus & Luce, and H. M. Ansley for services in proceeding to secure the appointment of receiver, and on appeal and mandamus proceeding in Supreme Court, is disallowed, but a fee of $500 is allowed to Lazarus & Luce for all services rendered in this matter from the appointment of the receiver to the date when their connection with this litigation ceased. From this said amount is to be deducted $234.79 paid them as commissions on collections. In all other respects the opposition is dismissed. Against the amounts allowed to Lazarus & Luce for fees, to wit, $500 for services rendered from the appointment of the receiver to date, and $500 as for special services rendered in the case of City of New Orleans v. Rosetta Gravel Paving & Improvement Co., to be charged the amounts paid by the receiver to the said Lazarus & Luce for expenses in New York in connection with the bankruptcies of Samuel J. and Helen H. Hart, and the same is also to be charged with the $234.79 advanced *626 to them as commissions on collections as set forth. In all other respects, the opposition is dismissed.”
From this judgment Lazarus & Luce alone have appealed; the opponents contenting themselves with filing an answer to the appeal so taken, in which they ask this court to amend the judgment appealed from by maintaining their opposition not only as to the items appearing on the account as paid or credited to Lazarus & Luce, but as to a number of items appearing as paid or credited to other persons.
Opinion.
The account of the receiver was presented to the district court with a petition bearing the signature of the appellants as attorneys for the accountant; and individually they make no complaint of it, and have not appealed from the judgment rendered upon the opposition thereto, save in so far as it operates upon the amounts appearing to have been paid or credited to them. That judgment can therefore be altered by this court only in respect to those matters, and cannot be amended as between the appellees. Fields v. Creditors, 11 La. Ann. 545; Converse v. The Lucy Robinson, 15 La. Ann. 433; Lallande v. McRae, 16 La. Ann. 193; Hottinger v. Hottinger, 49 La. Ann. 1635, 22 South. 847; Succession of Trouilly, 52 La. Ann. 281, 26 South. 851.
The appellants admit that they represented certain creditors of R. T. McDonald, deceased, and that they also represented his administrator in the matter of a judgment for over $66,000 which he had obtained against the Harts. They were therefore doubly interested in the execution of that judgment. They also admit that their clients were unwilling or unable to advance any money to contest the discharge of the Harts in bankruptcy; that they were therefore “bound to secure the funds” needed for that purpose from the paving company, and, under those circumstances, that they advised the bringing of the suit to have the paving company placed in the hands of a receiver; and, though the petition in that suit was signed by Mr. Ansley alone, the appellants are claiming and have been allowed compensation therefor as for a service rendered to the paving company. They further admit that with the funds furnished by the receiver, but in the name of McDonald’s administrator, they contested the discharge of the Harts, but were unsuccessful, and the present proposition is that, in addition to the $500 allowed by the district court, this receivership shall pay a further sum of $453.-38 on account of costs, charges, and fees disbursed for that purpose at the discretion of the appellants, as also a fee of $750 charged by them for their services in the matter. AVe agree with the judge a quo that the proposition is untenable. It is true that the appellants were authorized by the orders of December 4, 1900, and February S, 1901, to represent the receivership in the bankruptcy proceedings, to vote upon the question of the selection of a trustee, etc.; but it is also true that between the dates of those orders, to wit, upon January 21, 1901, the receiver presented a petition to the court in which he specified $500 as the amount required for the purposes of that business, and that amount was allowed. The judge a quo, in his reasons for judgment, after referring to the order of December 4, 1900, says:
“Then, on January 21, 1901, another order was issued, directing the receiver to pay Messrs. Lazarus & Luce $500, to be used in the payment of court costs, stenographer’s fees, and traveling expenses, or so much thereof as was necessary to carry out the above order in connection with the Hart bankruptcy. This order was, as directed by the statute regulating receivers, placed upon the order book for ten days, and, not having been opposed by any creditor or stockholder, became effective and was signed. This was the only order for the specific payment of money ever granted by the court in connection with the Hart bankruptcy in New York, and the only one ever paid by the receiver, with the sanction of the court, for said purpose. It is contended that the subsequent order of the court (the one signed February 8, 1901, authorizing the receiver’s attorneys to continue the litigation in New York) authorized the further expenditure in costs by them of the funds of the corporation. No such construction can be placed upon the order, or any order issued by the court in these proceedings. If any further sum was needed, counsel for the receiver should have followed the same course *628 which they did when applying for the $500, stating the amount needed, the purposes for which it was to he applied, and having the order, if the court deemed it proper to grant it, spread upon the order book for ten days. To construe that order so as to authorize the attorneys for the receiver of the corporation to expend the money of the corporation at their discretion, without the knowledge of the court, or in advance, as is contended by them, is in direct violation of the statute and the general law covering receivers and receiverships. It is further contended that the services rendered in New York were necessary and beneficial to the corporation, and therefore the expenditure should he allowed, even if the order had not been obtained. Thi's argument cannot prevail. The efforts of the counsel were not successful. They received no money, and, even if they had .been successful, no money could have been received by the corporation until a large judgment in favor of R. T. McDonald against the Harts, amounting to $6C,150.43, held for collection by the same counsel, had first been paid.” The statute to which the learned judge refers (Act No. 159, p. 315, of 1898) reads: “Sec. S. The clerk of the district court shall keep a book to be known as the ‘Receivership Order Book’ among the records of office, and shall immediately enter notice of the filing of every petition, motion, rule, or application, made in behalf of any person (giving the title and number of the cause, date of filing, name of petitioner and object of the petition, etc.) and shall note on said book the time of filing, etc., and shall enter at large therein all orders or decrees .made by the court in relation to any receivership. No order shall be granted by the court until ten days after the entry of such notice in the order book exeejrt an order to show cause, or when circumstances, in the opinion of the court require otherwise and the same is so stated in the order or decree.”
It is not pretended that notice of the orders of December 4, 1900, and February 8, 1901, was entered in the order book, nor do those orders contain the statement that the circumstances under which they were given required that such notice should be dispensed with. It is clear, therefore, that the statute was not complied with, and that if the appellants are to recover anything more than the $500 specifically allowed,, whether for disbursement or services in the Hart bankruptcy proceedings, the recovery must be had on the ground that such disbursements and services have resulted in actual advantage to the receivership, equivalent to or exceeding in value the amount claimed. It would appear, however, prima facie, that, if it was worth nothing to the appellants’ original clients, the creditors and administrator of R. T. McDonald, to contest the discharge of the bankrupts, it was worth no more to the paving company. And this prima facie aspect is in no wise altered by anything that we find in the record. The account filed shows that the receiver has collected $8,837.32, as follows:
Claims pledged to and collected under agreement with Louisiana National Bank.................... $4,340 30'
Unpledged claims for paving....... 2,685 58
Borrowed from Louisiana National Bank under order of January 21, 1001 .......................... 500 00
Proceeds of movable property sold.. 530 18
Proceeds of office furniture inuring to lessor ....................... 169 30
Rent collected, inuring to lessor.... Ill 96-
Total ........................ $8,837 32
In what manner the litigation in the matter of the Hart bankruptcy contributed to the collection of this money does not appear, and we are at a loss to imagine. It is said that the appellants saved to the receivership the stock of the company which had been pledged to it to secure the loan of money to Judah Hart. But conceding, arguendo, that any effort was required to save the stock so pledged, the petition for the receivership alleges that the assets surrendered by the bankrupts were worthless; and there is nothing in the record to indicate that the allegation, in so far as the stock is concerned, was not well founded. It is said that the appellants obtained information which is of value to the receiver, but the record fails to disclose either the nature or the value of that information. It is said that the judge a quo erred in holding that no money could, in any event, have been realized from the bankruptcy by the receivership until the judgment in favor of McDonald’s administrator had first been satisfied. Be that as it may, if it be true that the bankrupts surrendered nothing of value, there was nothing in the bankruptcy for ei *630 ther of the creditors; and, if anything to the advantage of either had or could have resulted from défeating the discharge of the bankrupts, the appellants would probably have had to choose between their clients, and in that event it is not unreasonable to suppose that they would have adhered to those by whom they were first employed.
The item of $234.79, paid to the appellants on account of commissions for collecting paving certificates pledged to the Louisiana National Bank, was also properly disallowed. The account, as we have seen, shows that the receiver has collected or received a total of $8,837.32, of which amount $4,840.30 was collected from certificates pledged to the Louisiana National Bank under an agreement that the , proceeds realized should be paid directly to the bank until the discharge of the principal obligation for which said claims were pledged. The receiver has nevertheless paid out in satisfaction of claims other than that of the bank the sum of $5,331.01, thus impinging on the money collected from claims pledged to the bank; and, whilst.the account shows a balance on hand of $3,256.31, it also shows that there is a balance due to the bank, from collections actually made for its account, of $3,323.94, and it likewise shows $2,543.60 of acknowledged, but unpaid, privileged claims. In the meanwhile it does not appear, upon the face of the account, that the bank has received a dollar — not even the $500 borrowed from it under the ordér of court — but it does appear that the attorneys of the bank have received $662.53 “on account of collection from paving liens pledged to said bank.” These figures are incomprehensible, but they at least leave no room for the item under consideration. It is objected that the judge a quo erred in disallowing the fee of $1,000 for “services in proceedings to procure appointment of receiver, and in appeal and mandamus proceedings in the Supreme Court,” and in allowing, in lieu thereof, to Lazarus & Luce, a fee of $500, subject to certain deductions “for all the services rendered in this matter, from the appointment of the receiver to the date when their connection with this litigation ceased.” The grounds of objection are, first, that there should have been no reduction or deductions; and, second, that the judgment goes beyond the issues presented for decision, in passing upon the value of the services rendered generally by the appellants after the filing of the original petition.
These objections are not well taken. The-judge a quo properly construed the account as setting forth all the claims that the appellants had to make, the testimony covered the entire ground, and the reduction and deductions were properly made.
The judgment appealed from is therefore affirmed.