Statement of the Case.
NICHOLLS, C. J.
The plaintiff, as widow of Ludwig Eichorn, seeks in this action to recover from the defendant the sum of $50,-000, with legal interest, because, as she alleged, through its negligence, unskillfulness, and want of care in laying its tracks on Baronne near Canal street, and operating its cars at said place on the 29th of January, 1002, it killed her husband, who was lawfully upon the public streets at that place, and without fault or negligence on his part.
She alleged.in her petition that the tracks were laid at the place for much narrower cars, and, since the tracks were laid, the said company had bought and operated, and did on the 29th of January, 1902, operate at that place, cars much too wide for the space between the tracks — a fact unknown to Ludwig Eichorn, and not noticeable by an ordinary observer, but which, in the interest of the public safety, and with its engineers and instruments of precision, operating electric cars through the populous streets of this city, it was bound to know and guard against, and a reasonable care for the lives of the people required it, when it adopted the wider cars, and made it the duty of the company, to increase the space between the tracks.
(2) It was negligent in the selection and employment of youths, too youthful and inexperienced, and careless motoneers in the operation of its cars, which caused the death of Ludwig Eichorn.
(3) On the day in question he was crossing Baronne street at the usual place, near Canal street, and his way was stopped by a 'car standing across the passage, and while he was standing in what appeared to be a perfectly *239 safe place, waiting for the car which obstructed his passage to go forward, another ear of said defendant company, coming in the opposite direction, carelessly and negligently, and without warning of its approach, and when the motoneer ought to have waited until the other car had passed, came on, and rolled and crushed the- said Ludwig Eichorn between the said two cars, when he was not on the track of either, but between the two, where he had a right to be, and to suppose he was perfectly safe.
The motoneer ought to have been warned by the officers of the danger of rolling a car at that place alongside of one on the separate parallel track, which had not been done, or, if done, he negligently disregarded the safety of Ludwig Eichorn.
The said company could have prevented the injury, and did not do so. Ludwig Eichorn .was so crushed by the said two cars that he suffered great pain in .body and mind for two days, and then died. Five thousand dollars is claimed for his own sufferings, and $45,000 for petitioner’s loss of his comfort and support. He was, previous to his negligent killing by defendant, in good health, and had a life expectancy of 40 years, and his earnings were about $3,000 a year. In view of the premises, petitioner prayed that the said New Orleans & Carrollton Railroad, Light & Power Company be cited to appear and answer, and be condemned to pay petitioner $50,000 damages, with 5 per cent, interest from judicial demand, and for costs, general relief, and trial by a jury.
Defendant excepted that plaintiff’s petition was vague, general, and indefinite, and disclosed no just and legal cause of action, and the suit should be dismissed. The exceptions were overruled.
The defendant then answered, pleading first the general issue. It denied that it was in any way liable for the injuries alleged to have been received by the husband of plaintiff, and averred that, if plaintiff’s said husband was injured as claimed in the petition, it was not through the fault and negligence of respondent, or any of its agents, servants, or employés, but, on the contrary, was entirely through the fault, negligence, and gross want of 'care of the plaintiff’s said husband; but, in the event it should be shown there was a question' of negligence, respondent pleaded that the said husband was guilty of contributory negligence.
Plaintiff, with leave of the court, filed a supplemental petition in which she alleged that she had been informed and believed, and so averred, that ^ince the filing of her suit the New Orleans Railways Company, a corporation doing business in this city, had acquired all the property of the New Orleans & Carrollton Railroad, Light & Power Company, and had assumed all of its liabilities, among which was petitioner’s right to damages.
That she reiterated and reaffirmed all the allegations of her original petition herein filed.
She prayed that the New Orleans Railways Company be cited; that petitioner have judgment against it in solido with the New Orleans & Carrollton Railroad, Light & Power Company, with 5 per cent, interest per annum from judicial demand, and costs, and for general relief.
The court ordered the New Orleans Railways Company to be made a party defendant and cited.
The case was tried before a jury, which returned a verdict for plaintiff in the sum of $25,000, with legal interest from judicial demand.
Defendant unsuccessfully applied for a new trial.
The court rendered judgment upon the verdict and in favor of the plaintiff against the-New Orleans & Carrollton Railroad, Light & Power Company for the sum of $25,000, with legal interest from judicial demand, and. defendant appealed.
*241 Opinion.
In 110 La. 534, 34 South. 667, will he found reported the case of Schwartz v. New Orleans & C. R. Co.—an action sounding in damages against the defendant in that case for injuries received by the plaintiff by being caught and crushed between two cars which were being operated by the defendant company on Baronne street, in New Orleans, near its intersection with Canal; the cars moving in opposite directions on distinct tracks. The facts of the case are fully set out, and a diagram showing the situation of the railroad tracks at and near the spot where the injury was received will be found annexed to the opinion of the court. The injury to Ludwig Eiehorn which resulted in his death, and which gave rise to the present litigation, was received by him at the same place, and under very similar circumstances. The defendant company operates electric cars from a point on Canal street near the Mississippi river to Baronne, and thence up Baronne street to the upper part of the city. The company has double tracks on the neutral ground on Canal street and also double tracks on Baronne street. The connection of the tracks upon these two streets is made by curved tracks crossing Canal street at Baronne. One of the company’s tracks on Canal is on the upper or right-hand side of the neutral ground as one faces the Mississippi river, and the other on the lower side of the neutral ground. The cars conveying passengers from the upper part of the city pass down upon the right-hand track on Baronne street, cross Canal street on a sharp curve to the upper side of the neutral ground on Canal, and pass on to the end of the line, near the river. At that point they cross to the track on the lower side of the neutral ground, and pass towards the rear of the city upon that track, until they reach Baronne. They then cross Canal street upon a wide curve to the intersection of Baronne and Canal streets, and proceed to the upper part of the city on the track opposite to that on which they had gone down.
The curved tracks by which the tracks on Baronne street connect with those on Canal street begin upon the crossing at the intersection of these two streets, upon which pedestrians cross from one side of Baronne street to the other. Baronne at that point is one of the busiest streets in the city. Hundreds of persons, if not thousands, cross there each day, and the street there is frequently blocked by vehicles. The tracks on Baronne street, even when they are parallel to each other, are too close together to enable a person to stand safely upon the space between the two, and, should a person be standing at the point where the curves upon the crossing commence at the time when two moving cars pass each other there, he would meet with almost certain death, as, in passing, the ends of the moving cars swing towards each other, and block the way up upon the upper side.
The tracks, when they were laid, were, even with the cars then in use, traps, to all persons not having knowledge .of the exact situation; and the danger had been made much greater for several'years past than it was before, as wider and longer cars have been substituted for those formerly used.
A street railway company accepting a franchise to operate cars upon tracks so dangerously laid at points very menacing to human life was bound to know of the risks it was assuming, and the duties and burdens it was taking upon itself. It is no answer for it to say that it could not control the city officers and authorities in its placing of the tracks. There was no obligation on its part to engage in the business at all, and, if it thought proper so to do, in view of and in spite of the attendant responsibilities, it could not avoid the legal consequences of a failure on its part to meet the requirements resulting from the exact situation. Not only was the company itself held to a knowledge *243 of the dangerous situation of affairs, hut the conductors and the motormen upon the cars were also hound to know this. It required no notice to them from the officers of the company of this fact, for this matter was constantly and directly before their eyes. The danger of the situation in respect to this crossing had been additionally demonstrated and brought home to the company by the accident to Schwartz. In the Schwartz Case this court quoted approvingly from Elliott on Roads & Streets (2d Ed.) pp. S56, 791, to the following effect: “If a railroad company, in the management of its traffic, causes unusual peril to travelers, it should meet such peril by corresponding precautions. So, where the crossing is especially dangerous to travelers, on account of its locality or mode of construction, or because the track is curved or the view obstructed, it is the duty of the company to exercise such care and take such precautions as the dangerous nature of the crossing requires.”
Proceeding, this court said: “The danger [in that ease] might have been avoided, without material impairment of the sufficiency of the. car service, by simply not permitting the cars 'to meet on the crossing, and it was incumbent upon the defendant to do so. See, in this connection, Summers v. Railroad, 34 La. Ann. 145, 44 Am. Rep. 419. That there is danger to the public in permitting the ears to meet at this crossing, the present case and another one before the court but too sufficiently attest. Defendant should have known of this danger, and guarded against it. He who creates a danger upon or near a public highway must see to it that no harm results therefrom to the public.” "Wharton, Negligence, 839; Thompson, Negligence, vol. 1, p. 346.
Notwithstanding this positive announcement by the court as to what was legally required of railroad corporations for the protection of the public at this very crossing, no steps whatever seem to have been taken towards the performance of defendant’s plain duty in the premises. No instructions were given to its subordinates on the subject, and they were left free to follow their own ideas as to what was proper or necessary to be done.
If the defendant company was of the opinion that its duties to the public went no further than compliance with positive existing statutes or ordinances, it was mistaken. In Lampkin v. McCormick, 105 La. 422, 29 South. 952, 83 Am. St. Rep. 245, we said: “It may be that these obligations were not imposed by general ordinances or statutes, but there are certain obligations imposed upon railroad corporations independently of convention or ordinance or statute. There is a duty imposed upon every one, whether natural persons or artificial persons, to avoid, by proper care, doing injury to others through their fault.” And in Sundmaker v. Yazoo & Miss. Valley R. R., 106 La. 116, 30 South. 285, this court declared that, if the city council failed to pass an ordinance called for by existing conditions, “the company should have, of its own motion, made a regulation to that effect; that it was in fault in not having done so, and must abide the consequences.”
It is error to suppose that trainmen operating cars have no duties to perform, other than those as to which they have received specific directions. They are required to do whatever the necessities of a particular situation or condition legally demands, whether they have received instructions or not; and, as said in Downing v. Morgan’s La. Railway Co., 104 La. 519, 29 South. 207, “the precautions to be adopted and the steps to be taken in aid of safety increase as the danger of accident and injury increases, and their sufficiency is to be gauged by what is called for by the special circumstances of each case.”
In Ortolano v. Morgan’s La. R. R. Co., 109 *245 La. 911, 33 South. 917, this court said: “Where trainmen have reason to believe that there are persons in exposed positions on the track, as over unguarded crossings in populous districts in a city, or where the public are wont to cross on the track with such frequency and numbers as to be known to those in charge of the trains, they will be held to a knowledge of the probable consequences of maintaining great speed without warning, so as to impute to them reckless indifference in respect thereto, and render- their employes responsible for injuries therefrom, notwithstanding there was negligence on the part of the injured, and no fault on the part of the servant after seeing the danger.”
We now pass to the facts of the case, and premise by saying that, at the point at which he was standing when injured, Eichorn was neither a trespasser nor a licensee. He was in the public streets of the city, and had a legal right to be where he was. Lampkin v. McCormick. On the morning of the 29th of January, 1902, Eichorn started to cross from the wood side to the liver side of Baronne street at its intersection with Canal street. He started'across the street almost at the same moment that one Geogehehan did so, Eichorn being upon the latter’s right. At that moment there was a car, which we will refer to as the “outgoing car,” upon the river-side track of Baronne street. It was then either at rest, discharging its passengers, with its front immediately above the foot crossing of Baronne street, or it was just starting or had just started to move out onto Canal on its way to the river. At this same time a car of the same company, which will be referred to as the “incoming car,” was crossing Canal street on its way uptown through Baronne street. Geogehehan and Eichorn both passed in front of the latter car without injury. The incoming car did not stop in consequence of their crossing in front of it. According to the motorman’s own account, he only checked up, and at once put the power on again. It is true that it was soon after this brought to a standstill, but only after. Eichorn had received his injury. Geogehehan and Eichorn, upon reaching the space intervening between the two tracks, found that they would be unable to cross over the second track, for the reason that the outgoing car had already started down the track, and was so close upon them as to have made it dangerous to pass in front of it. Both, therefore, stopped. In the meantime the incoming ear, moving up, passed to the rear of the two men. After the two cars passed each other, the front end of the incoming car and the rear end of the outgoing car swung across the space between the two tracks, closing it up so closely that the only exit which could be made at that time from parties between the two cars was by moving rapidly towards Canal street. The space between the ears widened as the curves extended into Canal street. Geogehehan, being on the left of Eichorn, and the nearer to Canal street, occupied a position where the interval between the tracks was wider than was the space in which Eichorn found himself.
Believing the space between the tracks sufficiently wide for safety, Geogehehan remained standing where he was, and escaped injury. In his testimony, he says that he was not squeezed, but it was very close. Eichorn, being to his right, on a narrower space, was rolled along between the cars, and his ribs crushed in to such an extent that in two days he died.
We have before us a model representing the condition of things at the place where the accident occurred, corresponding to the diagram which is attached to the opinion of this court in the Schwartz Case. Very considerable testimony was adduced to show upon the model the precise spot at which Eichorn was standing when the cars passed him, but we do not consider the fixing of that precise spot, under the circumstances *247 of this case, to be as important as defendant’s counsel think it was, for Eichorn had the legal right to have been either at the point where the plaintiff claims he was, or at that point at which defendant seeks to place him; and, as matters shaped themselves, the injury was as certain to occur to him at one place as the other. The two cars had no more right to throw him between them in the space between the tracks by moving past each other at one point than at the other. Downing v. Morgan’s La. R. R. Co., 104 La. 522, 29 South. 207.
The direct, immediate cause of the injury to plaintiff’s husband was the fact of the two cars of the defendant company moving simultaneously — one before and the other behind him — while he was standing in the very narrow space between the two tracks." The cars unquestionably met and passed each other on the foot crossing. This could not have been done without culpable negligence. (The outgoing car was brought to a standstill ¡after Eichorn got between the two cars by ■ the emergency signal given by its conductor, and the other car was brought' to a halt by the action of its motorman himself. The latter says he saw Eichorn “pass” his dashboard, and soon after, hearing him moan, he looked out, and saw him at the side of his car, and between the two cars. Unquestionably Eichorn disappeared from opposite the dashboard of the incoming car, but this was not because he moved to the left, but because that car, moving forward, passed up to and beyond him. Not a witness testified that either Geogehehan or Eichorn, prior to the accident, shifted their respective positions between the tracks from what they had been originally.
The two cars could not have occupied the positions which they did, relatively to each other and to Eichorn, on the space between the two tracks at or near the foot crossing, without fault on the part of defendant’s employe That condition of affairs cannot be explained away. Having reached the conclusions we have as to there being fault on the part of the defendant company, we have to inquire whether there exists any fact which it can set up which would relieve it from liability therefor. Defendant urges contributory negligence on the part of Eichorn, but we have failed to find any act of his which could be chargeable with being negligent. That question was thoroughly discussed in the Schwartz Case, and the same reasons which absolved Schwartz from the charge of negligence absolve Eichorn. He was clearly not chargeable with negligence in passing into the open space between the two tracks before the incoming ear, for he passed across in safety, and negligence, so far as that act is concerned, does not enter as a cause of injury at all as a factor in the consideration of the case. De Mahy v. Morgan’s La. R. R., 45 La. Ann. 1342, 14 South. 61; Schwartz v. Railroad, 110 La. 619, 34 South. 709. Being once upon the open space between the tracks, he could not have acted in any other manner than he did. He was perfectly passive, and the accident to him resulted by the two cars moving negligently, one in front of and the other behind him, so that he could not have possibly escaped. Geogehehan barred the way to the left, and the space to the right was closed.
As one of the general public, he was not called upon to know or to take in at a glance that the space between the two tracks was not wide enough to afford protection to a person standing upon it, or to know the length and the width of the cars used upon the road; and, if he had known that the position was dangerous, he had the right to assume that the company’s employés did also know, and one or other of the cars would stop before reaching him.
We now pass to the quantum of damages. Eichorn had five ribs broken and crushed into his lung. He died in two days. Defendant says that during that period he was *249 insensible. If there he testimony to that effect, it has escaped us. His wife testified he groaned constantly and suffered greatly. He earned from $200 to $250 a month. He was 39 years of age and in good health, and his expectancy of life was about.28 years.
(April 11, 1904.)
He left seven children, all minors. Plaintiff insists that the amount of the verdict was far too small an amount, and, by answer to the appeal, prays for an increase in the amount. The present suit is brought on behalf of the widow. Defendant’s counsel inform us that a second suit, claiming damages for a like amount, has been brought on behalf of the children.
No objection or exception was made to this course. We think it proper to say we do not think the lawmakers intended that there should be distinct suits before different juries, but that all the issues involved should be presented and disposed of at one and the same time.
We think the judgment in favor of the plaintiff on the merits is correct, but that the amount of damages allowed is too large, and that it should be reduced to $10,000.
For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount awarded to the plaintiff to $10,-OOO, and, as amended, it be affirmed; appellee to pay the costs of appeal.