to the firm for some eight items aggregating $997.02.

Thereupon Richard himself, not being satisfied, rummaged further among the private papers of the defendant, which he had left behind him on retiring from the firm, found his private bank statements, added up the total of the deposits which he had made during the existence of the partnership, and, finding that they aggregated $16,911.26, assumed, and now charges, that this amount was stolen by him from the firm.

### III.

Of course the trial judge did not allow this claim. Aside from the fact that some $4,000 was shown to be money which defendant had collected (on crops) for some farmers, to whom he paid it over at once, and the further fact that defendant had a large business of his own before going into the partnership with plaintiff, wherein he had made large advances which he was then collecting and wherein he was liquidating his own business, there is no evidence in this record that any part of this money was paid to him for account of the partnership; and, further, there is no evidence that the partnership failed to recover any sum whatever advanced by it to farmers and families; in other words, there is no evidence which even suggests that there is any money still due the partnership for advances, although plaintiff's theory is that defendant was advancing partnership funds and collecting his own advances out of the funds thus advanced. The trial judge saw no merit in this claim, and we see no error in his conclusion.

### IV.

 Of the eight other items claimed, the trial judge allowed three, aggregating $610.60. We have examined this record, and the evidence leaves it quite doubtful to our minds whether the evidence warrants the allowance of even these items. However, the trial judge heard and considered the case over a period of nearly 2 years, and it has not been pointed out to us that he manifestly erred either in allowing these three items or in rejecting the others; and his judgment as to all these items will be affirmed.

### V.

This case was filed June 13, 1925. At that time E. H. Richard was interested to the extent of eight-fourteenths, to wit, seven-fourteenths in his own right and one-fourteenth as one of the seven heirs of his mother, then deceased. On June 7, 1926, E. H. Richard compromised and discontinued his claim. Nine months later, to wit, on March 21, 1927, the case was put at issue (of course, as to the other plaintiffs only, representing six-fourteenths of the claim). From February 20, 1928, to May 25, 1928, the evidence was heard.

On June 18, 1928, the case was argued, briefs to be submitted later. Fifteen months later, to wit, on September 3, 1929, the briefs were filed and the case submitted.

Of course by that time the trial judge had completely overlooked the fact that E. H. Richard had discontinued his own claim over 3 years before. Accordingly, on September 30, 1929, his final judgment was a general one in favor of "the plaintiffs named in the petition," for the full amount which he found the defendant owed, instead of a judgment for all the plaintiffs named in the petition except E. H. Richard (who had discontinued his claim), and only for six-fourteenths of the amount due by defendant.

One year after this judgment (less a few days), to wit, on September 27, 1930, the "plaintiffs" appealed; and defendant has answered the appeal, asking that the claims of plaintiffs be entirely rejected or reduced to the proper amount. And we think that he is entitled to a reduction to the extent indicated above.

### Decree.

For the reasons assigned, the judgment appealed from is amended so that it be in favor only of "the plaintiffs named in the petition," *other than E. H. Richard,* and only for six-fourteenths of the amount allowed below. And, as thus amended, said judgment is affirmed. Appellants to pay the costs of this appeal and defendant to pay the costs of the court below.

**NORTON et al. v. CRESCENT CITY ICE MFG. CO., Inc.** *

No. 13938.

Court of Appeal of Louisiana. Orleans.

March 13, 1933.

754

See, also (La. App.) 146 So. 758.

I. E. Uzzo and James J. Landry, both of New Orleans, for appellants.

Frank T. Doyle, of New Orleans, for appellee.

JANVIER, Judge.

Plaintiffs, children of William S. Norton, are his sole survivors. They allege that the said Norton died as the result of an accident, legal responsibility for which rests upon defendant.

█ Since Norton's death was not instantaneous, and since he suffered considerable pain and mental anguish, his survivors, if there is liability in defendant, were entitled to recover, not only the amount which he himself, had he lived, could have recovered as a recompense for his pain and suffering, but also for the direct loss of companionship, affection, and support which each survivor sustained as a result of the death.

The claim first above referred to, which has been transmitted by the death of Norton to his survivors, we shall, for convenience, hereinafter refer to as the "transmitted claim," and the latter, or direct claim, which accrued to each survivor for the loss of companionship, affection, support, etc., we shall designate as the "direct claim." The difference between the two claims is well set forth by the Supreme Court in many decisions, notably and most recently in Reed v. Warren, 172 La. 1082, 136 So. 59, and is exceptionally well explained in Tulane Law Review, vol. 6, p. 223, as follows:

"* * * At present the surviving beneficiaries under article 2315 have two distinct causes of action, either or both of which may accrue to the survivors upon the decease of the person wrongfully or negligently killed. One right of action is that granted by the amendment, in 1855, of article 2294 of the Code of 1825, and is for the damages the deceased could have recovered had death not ensued. The other right of action is that provided by the amendment, in 1884, of article 2315 of the Code of 1870, and includes all damages suffered by the survivor due to the death, among which are damages by loss of support, loss of society and companionship, grief, and mental anguish."

The said survivors, in this suit, presented only the transmitted claim and in their petition sought to reserve their rights to file another or other suits and in the other suit or suits to present their respective direct claims. To this petition defendant excepted, asserting

"that said petition discloses a want of proper parties."

Although the exception thus purports to be one of "nonjoinder" of proper parties plaintiff, its purpose was to raise objection to the attempt to reserve the right to file another suit or other suits later and in them to assert the direct claims.

The exception was overruled by the judge of that division of the civil district court to which the case was first allotted, but shortly thereafter, because of the illness of the judge of that division, the matter was reallotted to another division, and, on rule in the new division, a new trial of the exception was granted and on the second hearing the district judge expressed the view that, though the objection intended to be presented was not properly raised by the plea of nonjoinder, an objection properly raising that question ought to be sustained, and he afforded defendant an opportunity to file a rule to compel plaintiffs to elect whether they would withdraw the reservation and abandon all right to later assert in other litigation their direct claims for damages, or whether they would at once amend their petition and assert those direct claims in this suit.

Thereupon plaintiffs, realizing that the said rule to elect, if filed, would be made absolute, filed a motion in which they sought an order permitting the withdrawal of the said reservation. The order rendered upon this motion reads as follows:

"It is ordered that the plaintiffs be and they are hereby permitted to withdraw from the prayer of their petition, the reservation hereinabove quoted and the petition is now so amended as if such reservation had never been written."

Due, therefore, to the order permitting the withdrawal of the attempted reservation, the rule to elect was not presented, but, instead thereof, defendant filed a supplemental answer in which, after denying all liability, it prayed that, in the event liability should be made manifest, recovery be limited to the so-called transmitted claim and particularly that the defendants be permanently enjoined from ever asserting in this suit, or in any other suit, whether in the civil district court, or in any other court, any claim for the direct losses sustained by them.

Defendant's contention, as presented by the supplemental answer, is that when a person is injured under circumstances which render another liable and later dies as a result of the injury, leaving several survivors who are entitled to make claim under article 2315 of the Civil Code, all the claims of all the survivors must be set forth in one suit, and that, where such survivors bring suit and assert only that claim for the damage which the deceased himself could have presented— in other words, the transmitted claim—their failure to make claim in the same suit for

their own direct losses constitutes a waiver or abandonment of the said direct claims, and that particularly is this true where, as here, an attempt is made to reserve the right to later assert the direct claims and that attempted reservation is afterwards expressly withdrawn.

When the matter was tried on the merits, judgment was rendered for plaintiffs for $3,000, which amount was fixed as the sum which deceased himself could have recovered had he lived, and in the said judgment plaintiffs were permanently enjoined from, at any time in the future, attempting to assert their other claims for direct losses. That portion of the judgment under which plaintiffs are enjoined reads as follows:

"It is further ordered, adjudged and decreed that writs of injunction do issue herein against each of the six plaintiffs above mentioned, their employees, agents, attorneys in fact and attorneys at law, forbidding, prohibiting, enjoining and restraining them from bringing in this court or any other courts, any other suit for recovery for any damages that may have been occasioned to them by the death of the deceased, Norton, and especially enjoining the plaintiff George I. Norton who has brought suit in the district court of the United States for the Eastern District of Louisiana, from further prosecuting said suit.

"It is further ordered, adjudged and decreed that the plaintiff or plaintiffs who may live out of the jurisdiction of this court, be served with said writs of injunction by serving same on one of their attorneys in this case, or, by mailing it to them, at their last known address."

From this judgment plaintiffs have appealed. They ask that the injunction be recalled and that they be permitted to prosecute their claims for direct losses and also that the amount awarded in this suit on the transmitted claim be increased. Defendant has answered the appeal.

■ It may be conceded that at the present time the jurisprudence of this state is definitely settled to the effect that, in such a situation as was presented by the death of Norton, only one suit may be brought and that by all the survivors and that that suit must include both the claim transmitted to the survivors by the death of the deceased and the respective claims of each survivor for his or her direct losses. See Reed v. Warren, 172 La. 1082, 136 So. 59.

If, at the time plaintiffs were required by the district judge to elect whether they would present all claims in this suit, or would claim in this suit only the so-called transmitted right, Reed v. Warren had already been decided by the Supreme Court, then, of course, plaintiffs could have found no fault with the requirement under which they were, in effect, directed to make their choice. But that

decision was not rendered until June 22, 1931, whereas the dilemma in which plaintiffs found themselves and which was caused by the ruling of the district judge that they must elect whether to assert both claims in this suit, or abandon their claims for direct losses, came into being on May 8, 1931, and at that time the final word on the question of whether all claims must be presented in one suit was to be found in the decision of this court in Reed v. Warren, 18 La. App. 31, 132 So. 250, rendered by us on January 19, 1931. This decision, it is true, was later reversed on writ of certiorari by the Supreme Court, but plaintiffs believed that our decision set forth the law on the subject, and, therefore, the question presented is not whether the action that they took was justified by the law as it was later announced by the Supreme Court, but whether it was justified by the then existing jurisprudence as they found it.

Not only does it appear that they were fortified in their decision by our opinion in Reed v. Warren, but, as we then interpreted the decision of the Supreme Court in Eichorn v. New Orleans & C. R. Light & Power Co., 112 La. 236, 36 So. 335, 104 Am. St. Rep. 437, that case was also authority for the position taken by them. In that case the petitioner, widow of deceased, asserted only the transmitted claim in the one suit and in effect reserved the rights of herself and her children to file suit thereafter on the direct claims, and, while it is true that, in the original opinion, the Supreme Court expressed the view that the lawmakers had not "intended, that there should be distinct suits before different juries," nevertheless the court permitted that course to be followed, just as plaintiffs have attempted to do here, and, in refusing rehearing in that case, the Supreme Court used language which appeared to us, and no doubt also appeared to plaintiffs in this case, as complete authority for the right to separate the claims and present them in different suits. And a reading of the language used by the Supreme Court in the original opinion in the Eichorn Case shows that the court was condemning the separation of the claim of the widow from those of the minors and was not referring to the separation of the transmitted claim from the direct claims.

We had always entertained the view expressed in Tulane Law Review, supra, that: " * * * Where there are a number of surviving beneficiaries of the same class, such as children, each beneficiary may file a separate suit for the damages due him; but the defendant may insist that all survivors having a right of action for the pain suffered by the deceased and damages caused by the death shall be made parties to a single suit, if they are within the jurisdiction."

That prior to the decision of the Supreme Court in Reed v. Warren the jurisprudence of this state permitted the transmitted claim to be asserted separately from the direct claim is the view which is expressed in Tulane Law Review, supra, page 223 of volume 6, in which the Eichorn Case is cited as authority for that view.

While the decision of the Supreme Court in Reed v. Warren does not squarely hold that the transmitted claim and the direct claim must be asserted in the same suit—that was not the question which was presented—nevertheless we feel that the language used by the court and the reasons given make it manifest that the view of the Supreme Court on that subject has been expressed in that decision, and that the view of that court, as plainly set forth in that decision, is that both the transmitted claim and the direct claims must be presented in one suit.

Since the view expressed by us when that case was before us was to the contrary and since we interpreted Eichorn v. New Orleans & C. R. Light & Power Company as expressing a contrary view, the question is: What is the effect on intermediate transactions of our decision? What effect has jurisprudence which is later overruled by the highest court of the state on actions taken while the overruled jurisprudence was still in effect and was the last expression on the subject? The question is a very interesting one and innumerable decisions have been rendered, some holding that the correct law must be presumed to have been always in existence and that, since the intermediate decision, which is later overruled, does not express the correct law, parties shall not be governed by those intermediate incorrect decisions, and other courts have held that parties are within their rights in governing themselves in intermediate actions by what they are justified in believing is the jurisprudence on the subject and that they cannot be deprived of substantive rights which came into existence as a result of relying on the intermediate jurisprudence just because that jurisprudence is later reversed.

Our view is that it would work manifest hardship, even though a substantive property right may not be involved, to require parties to govern themselves other than by the existing jurisprudence at the time action becomes necessary. In a very interesting case on the subject (Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 53 S. Ct. 145, page 148, 77 L. Ed. ——), the Supreme Court of the United States said:

"A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed, there are cases intimating, too broadly (cf. Tidal Oil Co. v. Flanagan [263 U. S. 444, 44 S. Ct. 197,

68 L. Ed. 382], supra), that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted."

We note particularly the language that courts may treat intermediate decisions as governing intermediate transactions "whenever injustice or hardship will thereby be averted."

■ It is well settled in practically all jurisdictions that judicial interpretation of a statute becomes a part of the statute itself, so far as contract or property rights are concerned, and that, for this reason, changes in judicial interpretation should not be given retroactive effect.

"The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to a legislative amendment; that is to say, make it prospective, but not retroactive. After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment." Douglass v. County of Pike, 101 U. S. 677, 687, 25 L. Ed. 968.

See, also, Lyons v. Veith, 170 La. 915, 129 So. 528.

In fact, it was said, in Succession of Levy v. Hitsche, 40 La. Ann. 508, 4 So. 472, 476, that:

"The true rule is to give a change of judicial construction in respect to a statute the same effect, in its operation on contracts and existing contract rights, that would be given to a legislative amendment; that is to say, make it prospective, and not retroactive."

■ While it is true that there was no property right involved in the question of whether or not plaintiffs should present all of their claims in one suit, this matter involving only a question of procedure, nevertheless, when plaintiffs acted upon existing jurisprudence as they believed it to be, and as we believed it to be, and were thereby immediately deprived by the judgment of the district court of the right to present claims which were afforded them by article 2315, Civ. Code, then we think they were deprived of substantial property rights.

We cannot countenance the rule adopted in some states that intermediate decisions, when overruled, are as ineffective as though they had never been written. This rule, as stated by Mr. Justice Cardozo in Great Northern Ry. Co. v. Sunburst Oil & Refining Co., supra, though plainly not approved by him, is based on the theory that the finally adopted jurisprudence "had a Platonic or ideal existence before the act of declaration, in which event the discredited declaration will be viewed as if it had never been, and the reconsidered declaration as law from the beginning."

We believe that jurisprudence, though later overruled, should rule and control intermediate transactions.

■ It is argued, however, that even if originally, acting under the jurisprudence as it then existed, or was believed to exist, plaintiffs might have asserted their rights in separate suits, nevertheless, when they waived and withdrew the reservation which they attempted to make in this suit, they thereby affirmatively abandoned all right to present their direct claims in other suits.

We do not think that their action in this regard should be so construed because, if they had the right to divide their claims, as they attempted to do, they could have done so without making any reservation in the first suit, and all that they did, when they withdrew the reservation, was to agree to withdraw an attempt to make a reservation, which reservation it was not necessary to make. Furthermore, when they made their withdrawal the language thereof placed them in identically the same position in which they would have been if there had been no attempted reservation. The order permitting the withdrawal reads as follows:

"It is ordered that the plaintiffs be and they are hereby permitted to withdraw from the prayer of their petition, the reservation hereinabove quoted and the petition is now so amended as if such reservation had never been written."

We are not concerned with what may have been the reasons of plaintiffs for desiring to present their claims in separate suits, instead of in one consolidated litigation. We cannot accept as well founded the statement of defendant's counsel that they would have obtained more by this method than had they presented all claims together. It cannot be assumed that courts will allow themselves to be taken advantage of in such manner, and we must presume that, if all the claims had been tried separately, the total sum of all of the judgments would have been the same as that which would have been awarded if all had been tried together.

■ On considering the question of whether or not defendant is liable and whether the amount awarded on the transmitted claim is correct, we are unable to find fault with the judgment on that phase of the case.

■ While we are of the opinion that plaintiffs should not have been required to elect between presenting all of their claims in one suit, or abandoning their rights to their direct claims, nevertheless, in view of the fact that, since that time, our Supreme Court has announced that the correct rule is that

all such claims must be presented together, we feel that, since that rule can now be followed in this case by remanding the matter to the district court, the better course for us to pursue is to follow the presently existing jurisprudence and to remand the matter, as we may do in the exercise of our equity powers and as we shall do whenever the ends of justice seem to require it.

So far as the injunction is concerned, we do not believe that it should have been granted in this case. It would have been time enough in another suit for defendants to have contended that all rights had been adjudicated upon in this suit.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that the matter be remanded to the civil district court for the parish of Orleans, and that in that court plaintiffs be afforded an opportunity to present, by amendatory pleadings, any and all claims which they may have arising out of the death of William S. Norton, and for further proceedings not inconsistent with the views herein expressed and according to law.